# B. L. HUDDLESTON v. ROBERT E. LEE et al.—284 S. W. (2d) 705.

Middle Section. July 29, 1955.

Petition for Certiorari denied by Supreme Court, December 9, 1955.

466

Tyne, Sugg & West, of Nashville, for complainant.

E. T. Hollins, Jr., of Nashville, for defendant.

SHRIVER, J. The parties will be referred to as complainant and defendants as they appeared in the Court below.

## I

This suit was brought by the complainant to rescind a contract of purchase of a model 99 Taylor Automatic Freezer and to recover the purchase price.

In the original bill the complainant alleged that in 1952 he decided to enter into the business of selling ice milk products and desired to purchase the necessary machinery and equipment to produce same. He alleged that he was unfamiliar with the business he was about to enter and with the machinery used in such business.

Defendants were dealers in machinery of the kind in question, so he sought their advice about the equipment he needed. He alleged that defendants recommended

a Taylor Automatic Continuous Freezer which they were retailing and he relied on their advice and recommendations in the purchase of same.

The bill further alleges that the machine failed to do the work for which it was purchased, and which it was represented to him by the defendants that it would do, and, after it broke down some thirty-three or thirty-four times, complainant demanded that defendants take back the machine and return the purchase price of $2,580.

This the defendants refused to do.

In their answer the defendants averred that the machine sold to the complainant was not one manufactured by them but was an article of merchandise which they had for sale and that there was no warranty by defendants as to its fitness for any particular purpose.

The answer further set forth the fact that, in selling the machine, there was a written warranty which was confined to the furnishing of service and replacement of defective parts for a period of one year and that correction of such defects by the seller constituted a fulfillment of its obligation to the purchaser, and it was claimed that they had lived up to said written warranty by making repairs when they were called on to do so.

Defendants admitted that, in selling the machine, they discussed with the complainant the merits of same, but they denied that he relied on their advice in making the purchase and claimed that the trouble that complainant had experienced was due to his improper operation of the machine.

The answer further denied that the complainant had, at all times, held the machine for them since he demanded a rescission and return of his purchase money, but averred that complainant has used, and is using, the machine for production of soft ice-cream products.

There was a general denial of all of material allegations and that complainant is entitled to any relief.

The suit was heard by Special Chancellor, E. J. Walsh, sitting for Chancellor W. J. Wade. It was tried on depositions and the Chancellor rendered an opinion holding that complainant was unfamiliar with the kind of machinery needed in his business and had relied on the sellers' judgment and representations in making the purchase, that the machine did not perform, and apparently was not capable of performing the work for which it was purchased, and that there was an implied warranty of fitness of the machine for the purposes for which it was sold, which defendants had breached and, therefore, the complainant was entitled to rescind the contract and recover the purchase price of $2,580 with interest from the date of filing the original bill.

From this decision and the decree of the Chancellor the defendants prayed and were granted an appeal to this Court.

## II

There are four assignments of error as follows:

"1. The Court erred in finding and decreeing that the defendants are liable to the complainant upon an implied warranty of fitness of the machine for the particular purpose for which the machine was purchased and that, by reason of such breach, the complainant is entitled to rescind the contract of purchase and recover the purchase price of $2580.00, with interest from the date of filing the original bill.

"2. The Court erred in finding and decreeing that the complainant did not waive his right to cancel the contract in question.

"3. The Court erred in finding and decreeing that

the complainant was entitled to rescind the contract of purchase and recover the purchase money.

"4. The Court erred in finding and decreeing that in purchasing the machine in question that the complainant relied upon the defendants' judgment and representations; and that the machine did not perform and apparently was not capable of performing the work for which it was purchased."

### III

There is very little dispute about the material facts in this suit.

The defendants, who were distributors of machinery and equipment of the kind needed by complainant, recommended to him a model 99 Taylor Freezer, stating to him that it was, in their opinion, the best machine on the market and well suited for his needs.

It seems evident that complainant relied on their advice and representations, together with the representations made in certain literature that they furnished him regarding the machinery he was about to purchase.

Defendants delivered a memorandum or a bill of sale to the complainant dated April 18, 1952 and showing a description by model and serial numbers of the items of equipment, including the model 99 Taylor Freezer, and at the bottom of this bill of sale, was printed a warranty as follows:

"The seller agrees with the purchaser hereof that if the product or products above described shows or develops any mechanical defects within the period of *one* years from the date of purchase that it will service and replace all such defective parts free of charge, providing no alterations are made on the product and the product is used and operated under normal

conditions and the seller is given immediate notice of such defects; and the correction of such defects by the seller shall constitute a fulfillment of its obligations to the purchaser hereunder. This 18, day of April, 1952.

Lee Refrigeration Co.
By L. L. Lee."

(Exhibit No. 4, direct examination of B. L. Huddleston-Trs. p. 14)

After the machineery was installed, the defendants delivered to the complainant a written warranty of the maker of the machine, "Tekni-Craft", (exhibit No. 9 to the complainant's deposition Tr. p. 18). It is in similar terms to that above quoted.

The Chancellor found as follows:

"Complainant testified that the machine broke down the second day after it was installed, and it broke down 34 times thereafter. Complainant says he called upon the Defendants to repair the machine on a number of occasions, and that after it had broken down about fourteen times, the Defendants refused to come out and repair it any more.

"Witnesses Bagwell, Grayson, Mrs. Brown, Miss Withrow, and Miss Huddleston, all testified that the machine broke down many times and would not work properly. Witness Bagwell sells the materials used in these machines and visits over two hundred different places that sell milk products, and he is familiar with similar machines. He said that he had frequently attempted to assist Complainant in getting the machine operating. He said that on seven or eight occasions he had seen the machine stop functioning, and that the machine would not make a saleable product."

\* \* \* \* \* \*

472

The opinion recites certain countervailing evidence offered by defendant and then continues;

"From a consideration of all of the evidence the Court finds that the Complainant was unfamiliar with the kind of machine needed in his business; that the Complainant made known to the Defendants the particular purpose for which the machine was required; that the Complainant relied upon the seller's judgment and representations and purchased the machine recommended by the Defendants; and that the machine did not perform, and apparently was not capable of performing, the work for which it was purchased. The Court further finds that the Complainant notified the Defendant to take back the machine and return his money, and he did not waive his right to cancel the contract."

(Chancellor's opinion Tr. pp. 117-120)

The Chancellor then stated that it was a question as to whether or not the obligation of the defendants is limited to the written warranty shown in the record (Exhibit No. 4 to complainant's testimony) or whether the defendants are liable on an implied warranty of fitness for the particular purpose for which the machine was purchased, and concluded that the defendants were liable on their implied warranty of fitness, which warranty was breached, and that they should have a return of the purchase money with interest.

IV

■ We are of opinion that a preponderance of the evidence supports the conclusions of fact hereinabove set forth in the Chancellor's opinion. Certainly it cannot be said that the evidence preponderates against his findings of fact.

There was an express written warranty which was made a part of the contract of sale and, under the terms of the written warranty, it is asserted that "the correction of such defects by the seller shall constitute a fulfillment of its obligations to the purchaser hereunder."

It is argued by counsel for the defendants that these terms were fully complied with and that they constituted a fulfillment of the contractual obligations of defendants to complainant and that there could be no implied warranty to the contrary and the Court was in error in so holding.

It seems to this Court that the complainant's right of recovery more properly rests on a violation of an express warranty, or express representations made by the defendants to the complainant as an inducement to buy the product in question.

While it must be conceded that the complainant does not make out a very strong case in his deposition with regard to the representations made by defendants as to what the freezer would do, yet, when we consider all the facts and circumstances together with the literature that was furnished complainant, we are impressed that he relied on these representations in making his purchase.

The defendants were in the business of selling this kind of equipment and were in much better position to know about the qualities of their product than was the complainant.

Exhibit No. 1 to complainant's deposition is a folder showing pictures of model 88 and model 99 Taylor Freezers and giving dimensions, capacity etc. Among other things, this folder states, "Enjoy the plus profits of the world's greatest freezer" * * * "Now ready to bring you the greatest performance of all time" * * * "Now ready to bring you more profits than ever * * * The

474

new Taylor Automatic Continuous Freezers—Model 88 and Model 99" * * * "They are entirely new—engineered especially to meet your needs.—They're the most efficient, most powerful, and most profitable freezers we've ever made—and the simplest, most convenient, and easiest to operate."

When we consider the admitted recommendations and representations of the defendants with respect to this freezer and then consider the experience that the complainant had with it, we are bound to conclude that the complainant had a right to feel that he had not received the kind of product that had been represented to him, and was entitled to ask for a rescission of the sale.

In resolving the question at hand, *we need to bear in mind the distinction between a tort warranty and a contract warranty, which is also the distinction between an express warranty and an implied warranty.*

■ The early common law regarded a warranty as no part of the contract of sale, but as the inducement to the contract; an obligation not assumed by contract but imposed by the law of torts. Action on a warranty was a pure action of tort. See Williston on Sales (second edition) Secs. 195-197.

■ This common law distinction between the two kinds of warranties was given the force of statute by the enactment of the Uniform Sales Act in most of the United States. By Section 12 of the Act, Code Sec. 7205, any affirmation of fact by the seller which induces the sale and any promise by him which has that effect, is an express warranty. A warranty based on such an affirmation is a tort obligation, not a contract obligation. See Du Pont De Nemours & Co. v. E. L. Bruce Co., 174 Tenn. 148, 124 S. W. (2d) 243.

■ It is said that the distinction between a tort war-

ranty and a contract warranty is the test for the application of the parol evidence rule. The rule applies only against attempts by parol to vary or contradict a written contract or to say it was different, in order to hold the seller on a promise or contract obligation not in the writing or contradictory of the writing. It does not apply where the effort is not to change the contract but to hold the seller for a tort, that is a false warranty or a false affirmation of fact, which was no part of the contract of sale but was the inducement to it.

In the case of Hogg & Belcher v. Cardwell, 36 Tenn. 151 the Supreme Court, in an opinion by Judge Robert L. Caruthers, had this to say:

"* * * If they (the false representations) were made to influence the bargain, and did have that effect, they would be equivalent to a warranty, and the vendors bound to answer for a breach. Whether they were made innocently or fraudulently could make no difference, if an injury resulted to the purchaser, who relied upon their truth, and made the trade on the faith of their correctness. The damage to the vendee in such cases does not depend upon the motives of the vendor.

"It is the same in its effects to him whether the statement by which he was deceived and misled to his injury were honestly or fraudulently made. There would be a great moral but no legal difference. The fact that this matter was not inserted in the written contract can make no difference. It was *not a part of the contract* of sale, but *the inducement* to it. It was a *distinct collateral matter,* on which liabilities arise that may be enforced."

The decision in Hogg & Belcher v. Cardwell, supra, was reaffirmed in Waterbury v. Russell, 67 Tenn. 159 and

again in Hines v. Willcox, 96 Tenn. 148, 33 S. W. 914, 34 L. R. A. 824, 832 and in Samuel v. King, 158 Tenn. 546, 551, 14 S. W. (2d) 963, 964, where it was said:

"It is well settled, of course, that failure of consideration may always be shown in defense of a suit on a note, or other written instrument. And it is also clear that inducing representations made before, or contemporaneously with, the execution of a written obligation, may be established by parol to defeat recovery thereon."

In Williston on Sales (2d Ed.) Sec. 215 pp. 417-418 it is said:

"Another principle which has not yet been very clearly brought out by the cases should be plain wherever it is recognized that an affirmation or representation may form the basis of liability in warranty even though there is no intent to warrant, and the representations cannot be fairly interpreted as an offer to contract. * * *"

Complainants rely on provisions of Section 7208 of the Williams' Anno. Code, particularly subsections (1) and (2) thereof, which provide:

"(1) Where the buyer * * * makes known to the seller the particular purpose for which the goods are required, and * * * relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

On the other hand the defendant relies on subsections

(4) and (6) which provide:

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.

\* \* \* \* \* \*

"(6) An express warranty or condition does not negative a warranty or condition implied under this article, unless inconsistent therewith."

In case of Kohn v. Ball, 36 Tenn. App. 281, 254 S. W. (2d) 755, 758, in an opinion by Judge Swepston, the judgment of the trial Court was affirmed wherein the defendant was held liable to the plaintiff under subsection (2) hereinabove quoted.

In the Kohn case plaintiff Ball had bought a new Buick automobile from the defendant Kohn who was an authorized Buick dealer. It is stated that the dealer made no express warranty but simply placed in the pocket of the car the manufacturer's warranty. In a day or two after the car was purchased it was exposed to rain and was found to leak around doors, causing damage to the seats and floor coverings. This resulted in the suit in question which was brought on a breach of warranty.

After quoting the Code sections in question, the Court said that:

"A warranty as to the condition of the car when sold is imposed upon the dealer by Code Section 7208.

"We take this to refer to subsection (2), supra, referring to condition or merchantable quality, whereas subsection (1) refers to fitness for the particular purpose known to the seller.

"The term sale by description strictly means an executory sale where the article is not present, but the term has been broadened to include all sales,

whether or not the goods are present, where there is no adequate opportunity for inspection. 21 A. L. R. 373; 168 A. L. R. 391, 414.

"Hence, we think this sale falls under subsection (2) and gives an implied warranty of condition or merchantable quality.

"This being true, subsection (4) has no application to such a warranty but applies only to eliminate the warranty for a particular purpose.

" 'The fact that a sale is of a known, described and definite article, or of a specific article by its patent or trade name, does not, according to most of the cases, preclude an implied warranty of merchantability or fitness for a purpose for which such article is ordinarily or generally sold. On the contrary, it is held in most of the cases that there is such a warranty in such a case'. 46 Am. Jur. 537, sec. 351; see also sec. 344. See also, G. M. C. Truck Co. v. Kelley, 105 Okl. 84, 231 P. 882; 168 A. L. R. 405, for application of rule to sale of new motor vehicle."

Defendant in the Kohn case further insisted that there was no implied warranty because the express warranty of the manufacturer excluded the implied warranty of the dealer. The Court refused to consider that question because the express warranty was not contained in the bill of exceptions stating, however "In any event under subsection (6) this would not be sound unless the two were inconsistent."

It is insisted by counsel for defendants here that the warranty given the complainant (exhibit No. 4 compl's dep.) is in such terms as to exclude the idea of an implied warranty such as that imposed by the Chancellor in his opinion.

■ This Court is of opinion that there is considerable merit in the position of counsel for defendants on this proposition. However, as we have stated hereinabove, the preponderance of the evidence is to the effect that there were such express representations made by the defendants as inducements to the sale of the article in question, as would render them liable where those representations proved to be false or erroneous, resulting in damage to the complainant.

■ We think that the proposition urged by counsel for the defendants that the machine in question was sold under its patent or trade name and that, therefore, there was no implied warranty as to its fitness for any particular purpose, is disposed of by the holding in the Kohn case, supra, wherein it was held to the contrary, citing several authorities with approval.

## V

Counsel for defendants also urges that there can be no rescission even though the seller has breached his warranty, where the buyer, though offering to return the goods upon payment of the purchase price, retains and uses same for his own benefit,—Citing Code Section 7262, subd. (5) and authorities.

It is insisted that the complainant herein retained and used the machine after he had complained that it was unfit for his purpose and that, by his use therof, he waived his right to rescission, and that his only remedy would have been a suit for damages.

■ ■ It is to be noted that the defendants did not specifically plead waiver and estoppel as special defenses, as many authorities hold that they must do. See Gibson's Suits in Chancery, Section 71; Graybar Electric Co. v. New Amsterdam Casualty Co., 186 Tenn. 446, 211 S. W.

(2d) 903 and other cases. It is also to be noted that, under the authorities, in order to make out a case of abandonment or waiver of a legal right, there must be a clear, unequivocal and decisive act by the party, showing such purpose, or act amounting to an estoppel on his part. See Stephens v. Stephens, 28 Tenn. App. 58, 185 S. W. (2d) 915.

 We are of opinion that the complainant did not make such use of the equipment in question as to amount to a waiver of his right to rescission, which he asserted soon after he discovered the defective condition of the machine, and within proper time.

## VI

From all the above it results that the defendants' assignments of error are overruled and the judgment of the trial Court is affirmed with costs.

Affirmed.

Felts and Hickerson, JJ., concur.