Ford Motor Company et al.

*v.*

Glenn Lonon.

398 S.W.2d 240.

(*Jackson,* April Term, 1965.)

Opinion filed January 5, 1966.

EVERETT GIBSON, Memphis, for Ford Motor Co., ARM-STRONG, MCCADDEN, ALLEN, BRADEN & GOODMAN, Memphis, of counsel.

L. W. MORGAN, and C. THOMAS HOOPER, III, Brownsville, for Haywood Tractor Co.

LYLE REID, Brownsville, for Glenn Lonon.

402

Mr. Chief Justice Burnett delivered the opinion of the Court.

The plaintiff, a farmer, needed a large tractor which would carry a four row planter and cultivator, and which would have live power take-off and other specific features. Since he had used tractors manufactured by the defendant Ford Motor Company almost exclusively in the past and found them satisfactory, he visited the Ford dealerships in Brownsville and in Jackson. At each of these places he obtained sales literature in the form of a brochure describing a series of Ford tractors, with a picture of a Ford tractor on it. He took this sales literature with him and testified that he read every page of it. The brochure included material about the tractor he purchased, in February 1962, a large Fordson Major Diesel. It contained information about the live power

take-off on this tractor, the power steering lift, full specifications, and "just all about the tractor". The plaintiff further testified that the brochure was not signed by the Haywood Tractor Company, the party from whom he made the purchase of the tractor.

It further appears that prior to purchasing the tractor he talked about the matter with Lon Lindsey, manager of Haywood Tractor Company, and with Lindsey's mechanic, Marcial Overton. Lindsey testified that his statements about the qualities and characteristics of the tractor were based on the Ford sales literature, with the name Ford Motor Company on it, which was supplied to him by the Ford distributor, Dealers Tractor & Equipment Company. Lindsey further testified that the approximate sales price of the tractor was $4,243.10 and that no written warranty was given to the plaintiff when he purchased the tractor. It further appears from a deposition by Lindsey that the Ford Motor Company carries on an extensive advertising program promoting the sale of its products in farm magazines, on TV and other media addressed to prospective purchasers of its products.

Although the tractor was operated by an experienced driver, who had operated similar tractors for the plaintiff without difficulty for several years, trouble developed the second or third day on which this tractor was used. Much of this trouble could not be corrected, with the result that the plaintiff failed to obtain the power take-off and other features he had been led to expect from the sales literature. The principal difficulties experienced with the tractor are indicated in the opinion of the Court of Appeals as follows:

"The tractor which the plaintiff purchased was mechanically defective and never functioned properly. Repeatedly the tractor was in the shop and repeatedly mechanics from Haywood Tractor Company were out to the farm trying to get the tractor to work. A field man for Ford Motor Company, Mr. Ray Lambert, was called and attempted to assist mechanics of Haywood Tractor Company in getting the tractor to function properly. The power lift failed to work; one or more clutches were installed; the live power takeoff never functioned properly; the plaintiff lost many days work in the field during planting season because of breakdowns. The more serious defect was that the tractor leaked oil from the crank shaft almost continuously from the time it was bought and this defect could never be corrected by mechanics from the Haywood Tractor Company. A representative of Ford Motor Company stated to employees of Haywood Tractor Company that they were having the same trouble with other Ford tractors of that same series or model."

After failing to secure any satisfactory adjustment on account of the deficiencies in this tractor the plaintiff brought suit against Ford Motor Company, Dealers Tractor & Equipment Company, and Haywood Tractor Company. It appears that Dealers Tractor & Equipment Company is the distributor for the Ford Motor Company in the Memphis area and the instrumentality employed by the Ford Motor Company to sell Ford tractors and tractor equipment to authorized or franchised dealers in that area. In this case Dealers Tractor & Equipment Company made the sale, apparently without any written warranty, to the Haywood Tractor Company, the retailer from which the plaintiff made his purchase. Like-

wise there is no evidence of any written warranty in the sale from Ford Motor Company to the distributor, Dealers Tractor & Equipment Company.

At the end of the trial, the jury were instructed that they could find for the plaintiff and against all three defendants, or for all three defendants. They were instructed that there could be no liability for breach of express warranty against any defendant unless it made a false representation of fact or promise relating to the tractor which induced the plaintiff to make the purchase. The trial judge also instructed the jury that they could find a breach of an implied warranty if the plaintiff made known to the seller a special purpose for which the tractor was to be used, and the plaintiff reasonably relied on the seller's judgment in purchasing the property for that use, and the tractor was not in fact fit for such use. The jury awarded damages in the amount of four thousand ($4,000.00) dollars against Ford Motor Company and returned a verdict in favor of the defendants, Dealers Tractor & Equipment Company and Haywood Tractor Company.

Ford Motor Company and the plaintiff appealed. It was necessary for the plaintiff to appeal to keep all parties before the court. The Court of Appeals found that Ford Motor Company could be held liable without privity of contract but considered it necessary to reverse and remand the case for a new trial on the ground that the verdict was inconsistent in holding Ford Motor Company liable and at the same time exonerating Haywood Tractor Company, the plaintiff's immediate vendor. The Ford Motor Company then petitioned for certiorari to this Court, on the ground that the courts below were in error in refusing to grant its motion for a directed ver-

dict because of the absence of privity of contract between the Ford Motor Company and the plaintiff. The Haywood Tractor Company also filed a petition for certiorari, assigning as error the ruling of the Court of Appeals that any verdict against Ford Motor Company must also be against the Haywood Tractor Company. Under these circumstances certiorari was granted.

The basic issue presented in this case is whether the manufacturer of a product that has been found to be seriously defective and unsuitable for use should be liable for a resulting commercial loss to the purchaser where there are no direct contractual relations between the purchaser and the manufacturer, in a situation where the purchaser has relied on the manufacturer's booklets and tradename in making the purchase.

We have concluded that the manufacturer should be liable in this situation. While this holding represents some development in the law, we believe that this development is needed to keep pace with modern conditions, and is supported by substantial legal authority throughout the country. While most of the decisions in other states holding the manufacturer liable without privity of contract have related to physical injury, a number of the more recent cases have applied the same principle to commercial losses resulting from a defectively manufactured product.

The concept that a manufacturer should be held liable to the retail purchaser of his product for misrepresentations made with reference to its quality or safety began with a holding by the Supreme Court of Washington more than thirty years ago. *Baxter v. Ford Motor Co.,* 168 Wash. 456, 12 P.2d 409, 15 P.2d 1118, 88 A.L.R. 521

(1932), on second appeal, 179 Wash. 123, 35 P.2d 1090 (1934). There the plaintiff purchased a new Ford car from a retailer. He relied on representations in the manufacturer's sales literature that all of the new Fords had "a shatter-proof glass windshield". While the plaintiff was driving his car, a pebble struck the windshield, causing a piece of glass to fly in his eye, destroying its sight. In the trial court both the dealer and the manufacturer were absolved of liability. The Supreme Court affirmed as to the dealer, on account of disclaimer clauses in the sales contract, but reversed as to the manufacturer. It was found that the plaintiff had a right to rely on the manufacturer's representations "even though there was no privity of contract." After a second trial, a judgment against the manufacturer was upheld. In its second opinion the court emphasized the concept of misrepresentation rather than that of warranty. In that connection it was found to be immaterial that the manufacturer did not know that its representations were false, so long as the plaintiff relied on them to his injury.

An authoritative writer states that the *Baxter* case "has now been accepted in some twenty jurisdictions, and there have been no contrary decisions since 1938". Wade, Strict Liability of Manufacturers, 19 Sw.L.J. 5, 13 (1965). A leading New York decision in following this view, goes on to apply it to a situation where simply a commercial type of loss resulted from erroneous representations by the manufacturer that its product would render cloth shrink proof when that was not the case. *Randy Knitwear, Inc. v. American Cyanamid Co.,* 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962). In that decision the status of the *Baxter* decision and

the reasons in support of this view are well indicated as follows:

"And in the 30 years which have passed since that decision, not only have the courts throughout the country shown a marked, and almost uniform, tendency to discard the privity limitation and hold the manufacturers strictly accountable for the truthfulness of representations made to the public and relied upon by the plaintiff in making his purchase [1] but the vast majority of the authoritative commentators have applauded the trend and approved the result.[2]

"The rationale underlying the decisions rejecting the privity requirement is easily understood in the light of present-day commercial practices. It may once have been true that the warranty which really induced the sale was normally an actual term of the contract of sale. Today, however, the significant warranty, the one which effectively induces the purchase, is frequently that given by the manufacturer through mass advertising and labeling to ultimate business users or to consumers with whom he has no direct contractual relationship.

---

[1] See, e. g., Burr v. Sherwin Williams Co., 42 Cal.2d 682, 696-697, 268 P.2d 1041; Hamon v. Digliani, 148 Conn. 710, 174 A.2d 294; Graham v. John R. Watts & Son, 238 Ky. 96, 36 S.W.2d 859; Simpson v. American Oil Co., 217 N.C. 542, 546, 8 S.E.2d 813; Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612, 75 A.L.R.2d 103; Silverman v. Samuel Mallinger Co., 375 Pa. 422, 428-429, 100 A.2d 715. But see, contra, Rachlin v. Libby-Owens-Ford Glass Co., 2 Cir., 96 F.2d 597, 600.

[2] See, e. g., 1 Williston, Sales (rev. ed., 1948), sec. 244a; 1 Frumer & Friedman, Products Liability (1960), sec. 16.04, subd. (4); Feezer, Manufacturer's Liability for Injuries Caused by his Products; Defective Automobiles, 37 Mich.L.Rev. 1; Holdridge, Advertised-Product Liability, 8 Clev.-Mar.L.Rev. 14, 39; Noel, Manufacturers of Products —The Drift Toward Strict Liability, 24 Tenn.L.Rev. 963, 999-1009, 1018; Prosser, The Assault upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1134-1138.

"The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising and, when representations expressed and disseminated in the mass communications media and on labels (attached to the goods themselves) prove false and the user or consumer is damaged by reason of his reliance on those representations, it is difficult to justify the manufacturer's denial of liability on the sole ground of the absence of technical privity. Manufacturers make extensive use of newspapers, periodicals and other media to call attention, in glowing terms, to the qualities and virtues of their products, and this advertising is directed at the ultimate consumer or at some manufacturer or supplier who is not in privity with them. Equally sanguine representations on packages and labels frequently accompany the article throughout its journey to the ultimate consumer and, as intended, are relied upon by remote purchasers. Under these circumstances, it is highly unrealistic to limit a purchaser's protection to warranties made directly to him by his immediate seller. The protection he really needs is against the manufacturer whose published representations caused him to make the purchase."

Along the same line the Supreme Court of Ohio has stated, in the case of *Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244, 147 N.E.2d 612, 75 A.L.R.2d 103 (1958):

"The consuming public ordinarily relies exclusively on the representations of the manufacturer in his advertisements. What sensible or sound reason then exists as to why, when the goods purchased by the ultimate consumer on the strength of the advertisements

aimed squarely at him do not possess their described qualities and goodness and cause him harm, he should not be permitted to move against the manufacturer to recoup his loss? In our minds no good or valid reason exists for denying him that right. Surely under modern merchandising practices the manufacturer owes a very real obligation toward those who consume or use his products.

The *Rogers* case involved personal injury, from a defective homewaving preparation, but the Ohio court recently has extended the same principle to a case involving simply pecuniary loss, as distinguished from physical harm to person or property. *Inglis v. American Motors Corporation,* 3 Ohio St.2d 132, 209 N.E.2d 583 (1965). In that case, as appears from the opinion of the Court of Appeals, 197 N.E.2d 921, the plaintiff was induced to buy an automobile by representations of the manufacturer by its "advertising in mass communications media to the effect that Rambler automobiles are trouble free, economical in operation, and built and manufactured with a high quality of workmanship." It developed that this particular car purchased by the plaintiff had doors which were out of line, a defectively cast motor that seeped substantial quantities of oil, a defective oil pump assembly, and numerous other defects. The plaintiff alleged that he paid $2700 for the car, and that by reason of its defects it was worth only $1200 at the time of the purchase.

Suit was brought against the manufacturer for breach of express and implied warranty. The Supreme Court held that demurrers were improperly sustained, stating:

"The case at bar is one of first impression in Ohio. Ohio has already contributed one landmark case—

*Rogers v. Toni Permanent Co.,* supra, that is respected and followed widely in the field of products liability. It was an instance of Ohio leadership in a mass of difficult legal questions. The principle laid down in Toni has been a strong arm of the law in its development to keep pace with the remarkable economic growth of our country during the past one-half century.

"We cannot overestimate the importance of a sound administration of justice in these days of ever growing, economic and social problems and challenges. The protection of the defenseless consumer has proven its value as a cornerstone in the structure of our national administration of justice. We believe that justice requires that the consumer who has been caused to suffer substantial pecuniary losses by national advertising of false claims should be protected regardless of the lack of privity."

Reference may be made to two other recent cases which support the proposition that the manufacturer is liable for pecuniary loss resulting from reliance on misrepresentations with reference to its product, even though there is no privity of contract, and no negligence is alleged. One of these is a decision by the Supreme Court of New Jersey in *Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965). The defendant there had purchased some carpet for his home from a retailer. This carpeting had been sold by the manufacturer as Grade No. 1 carpet. Almost immediately after it was laid the plaintiff noticed an unusual line in it which did not, as the retailer assured him it would, "walk out". Instead of improving it became worse and two additional lines appeared. Eventually the plaintiff decided to

"really have it out" with the dealer, but when he drove to the dealer's place of business he found a sign in the window saying "out of business" and discovered that the dealer had moved to Maine.

Suit was brought against the manufacturer's distributive subsidiary and at the trial it was conceded that the carpeting had been manufactured defectively. The trial court then found that there was an implied warranty of merchantability from the manufacturer to the purchaser even though there was no privity of contract between them, and the plaintiff obtained judgment for the full purchase price of the carpet. The appellate division reversed, but the Supreme Court held that the manufacturer could be held liable for the diminished value of the carpeting. In that connection it was stated:

"There is no doubt that the great mass of warranty cases imposing liability on the manufacturer regardless of lack of privity were concerned with personal injuries to the ultimate consumer. * * * But we see no just cause for recognition of the existence of an implied warranty of merchantability and a right to recovery for breach thereof regardless of lack of privity of the claimant in the one case and the exclusion of recovery in the other simply because loss of value of the article sold is the only damage resulting from the breach. * * * From the standpoint of principle, we perceive no sound reason why the implication of reasonable fitness should be attached to the transaction and be actionable against the manufacturer where the defectively-made product has caused personal injury, and not actionable when inadequate manufacture has put a worthless article in the hands of an innocent purchaser who has paid the required price for it. In such situations con-

siderations of justice require a court to interest itself in originating causes and to apply the principle of implied warranty on that basis, rather than to test its application by whether personal injury or simply loss of bargain resulted from the breach of the warranty. True, the rule of implied warranty had its gestative stirrings because of the greater appeal of the personal injury claim. But, once in existence, the field of operation of the remedy should not be fenced in by such a factor."

The other recent decision is one by the Supreme Court of California in *Seely v. White Motor Co.*, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). There the plaintiff had purchased a truck from the retailer. The plaintiff found that the truck bounced violently, an action known as "galloping". For eleven months after the purchase the retailer, with guidance from the manufacturer's representatives, made many unsuccessful attempts to correct the "galloping." While the manufacturer was not a party to the sale, the printed form of the purchase order indicated that the manufacturer "hereby warrants each motor vehicle sold by it to be free from defects in material and workmanship under normal use and service", with various limitations found to be inapplicable in this case. Under these circumstances the court found the the manufacturer, although not a party to the sale, had breached a warranty to the plaintiff and entered judgment for the plaintiff for $20,899.44 consisting of $11,659.44 for payments on the purchase price and $9,248.40 for the loss of profits. The court found that where the manufacturer had stated that the product would meet the purchaser's expectations, it could be fairly charged with this economic loss, even though the manufacturer was not a party to

the contract. There are similar decisions in *Continental Copper & Steel Indus. Inc. v. E. C. "Red" Cornelius, Inc.,* 104 So.2d 40 (Fla.App. 1958), *Hoskins v. Jackson Grain Co.,* 63 So.2d 514 (Fla.1953).

The principles developed in these cases have been adopted by the American Law Institute in 2 Restatement (Second) Torts sec 402B (1965). This development in the law is there accomplished by expansion of the concept of misrepresentation rather than by expansion of warranty concepts. Section 402B deals only with "physical harm" but it is stated in comment (a) that a parallel rule, as to strict liability for pecuniary loss resulting from such a misrepresentation, is to be contained in a proposed sec. 552D. Section 402B reads as follows:

"Sec 402B.  *MISREPRESENTATION BY SELLER OF CHATTELS TO CONSUMER*

"One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation even though

(a) it is not made fraudulently or negligently, and

(b) the consumer has not bought the chattel from or entered into any contractual relation with the seller."

A tentative draft of the proposed sec. 552D, dealing with pecuniary loss (Council Draft No. 17, p. 76) reads as follows:

## "Sec. 552D. *MISREPRESENTATION BY SELLER OF CHATTELS TO PUBLIC*

"One engaged in the business of selling chattels who, by advertising, labels or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for pecuniary loss caused to another by his purchase of the chattel in justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

*"Comment: a.* This Section parallels sec. 402B, which states the rule as to strict liability for physical harm to a user or consumer of the chattel, where the seller makes a misrepresentation to the public concerning its character or quality. This Section states the same rule, as to liability for pecuniary loss, caused to one who purchases the chattel in justifiable reliance on the misrepresentation. The Comments under sec. 402B are applicable here, so far as they are pertinent."

It should be noted that this section applies only to misstatements of material fact and does not apply to mere "sales talk". In that connection it is stated in 2 Restatement (Second) Torts sec. 402B, comment (g):

*"Material fact.* The rule stated in this Section applies only to misrepresentations of material facts concerning the character or quality of the chattel in question. It does not apply to the kind of loose general praise of wares sold which, on the part of the seller, is considered to be 'sales talk,' and is commonly called 'puffing'—as, for example, a statement that an automobile is the best on the market for the price. As to such general lan-

guage or opinion, see sec. 542, and Comment d under that Section, which is applicable here so far as it is pertinent. In addition, the fact misrepresented must be a material one, of importance to the normal purchaser, by which the ultimate buyer may justifiably be expected to be influenced in buying the chattel.''

■ While the trial judge's instructions in the present case were couched in the language of warranty rather than of misrepresentation, these instructions made it clear that the jury could not find against any defendant unless it made a misrepresentation of some material fact about the tractor, or made a statement that the tractor was fit for some special purpose for which it in fact was not fit. It was further made clear that any such misrepresentation must have been relied on by the plaintiff. There was no instruction that the misrepresentation must have been made to the public, but in view of uncontroverted testimony in the record that the manufacturer's brochures which the plaintiff examined were prepared for distribution to potential purchasers generally this omission was not prejudicial to the Ford Motor Company.

■ Likewise, we do not think that the defendant Ford Motor Company was prejudiced by the fact that plaintiff labelled his action as one for breach of warranty rather than one for misrepresentation. The action labelled warranty notified all of the defendants of the plaintiff's basic claim that he would seek to establish liability without negligence and without privity, on the basis of representations which turned out to be untrue as to tractor, and these issues have been the ones on which this case has been presented and decided. In this particular area, the line between liability for breach of warranty and the tort of misrepresentation is a thin one, and the defend-

ants were as well advised of the nature of the claim by the use of the word warranty as they would have been by the misrepresentation label. See *Huddleston v. Lee,* 39 Tenn.App. 465, 474, 284 S.W.2d 705 (1955); Prosser on Torts (3d. ed. 1964) p. 681.

Since, however, the decision in the present case is based on the ground that the manufacturer has committed the tort of misrepresensation rather than a breach of warranty under the Uniform Sales Act, it is not necessary to say to what extent privity requirements are to be dispensed with under the Sales Act, which was in effect at the time of this transaction. In that connection, in *Kyker v. General Motors Corp.,* 214 Tenn. 521, 381 S.W. 2d 884 (1964) we held that a purchaser who elected the remedy of rescission after purchasing a car from a retailer, and then sought recovery of its price from the manufacturer, could not recover from the manufacturer in an action for breach of warranty. We also pointed out in that case that considerable difficulties of construction arise if privity is dispensed with under the Uniform Sales Act, particularly in a rescission case. Similar difficulties are encountered with reference to the statutory provisions concerning notice of breach and disclaimers. See Prosser on Torts, (3d ed. 1964) 679-680. Where, however, in a case involving facts similar to those in *Kyker v. General Motors,* or in *Oliver Corp. v. Green,* 54 Tenn.App. 647, 393 S.W.2d 625, (1965), which follows the Kyker decision, the plaintiff can establish representations to the public, justifiable reliance on these representations, and the other matters necessary to bring his case under the rules developed in 2 Restatement (Second) Torts, sec. 402B and a parallel rule concerning pecuniary loss we consider that recovery is justified, both for physi-

cal and pecuniary loss, on grounds of misrepresentation, even though there is no direct contract relationship between the parties.

It might be added with reference to warranty that under the Uniform Commercial Code now in effect in this State there is less of a barrier to dispensing with privity requirements than under the Sales Act, in an appropriate case. This is because the official comment with reference to the section of the Uniform Commercial Code is neutral on the question of whether or not ''the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.'' See Comment 3 to Tenn.Code Ann. sec. 47-2-318. Furthermore, since the Uniform Commercial Code in sec. 47-2-318 considerably expands the retailer's liability for breach of express or implied warranty to non-purchasers, such as a guest in the purchaser's home, it may well be that some comparable expansion of the warranty liability of the manufacturer who actually makes the defective product is advisable.

There was considerable discussion in this case as to the status of the decision in *General Motors Corp. v. Dodson*, 47 Tenn.App. 438, 338 S.W.2d 655 (1960), and of the extent to which that decision is affected by our decision in the Kyker case. In the Dodson case the plaintiffs, husband and wife, bought a new Oldsmobile with power brakes from an authorized dealer of General Motors Corporation. Mrs. Dodson was injured when the brakes suddenly locked and as a result the car plunged into a ditch. There was convincing proof that the brakes were dangerously defective at the time the car left the manufacturer's hands. We affirmed the opinion of the Court of Appeals which allowed recovery against General

Motors Corporation on grounds of breach of express and implied warranties for both physical injury and property damage resulting from the accident.

We think that the result obtained in the *Dodson* case is sound. As indicated in this opinion, however, we would prefer to place that result not on warranty grounds, but on the misrepresentation theory recently developed in the above quoted 2 Restatement (Second) Torts, sec. 402B (1965). Furthermore, since in the *Dodson* case the automobile involved was not only defective but unreasonably dangerous, we think that liability in that case could properly be placed also in 2 Restatement (Second) Torts, sec. 402A (1965), which does not require any misrepresentation by the manufacturer. Section 402A is based on the concept that whenever a manufacturer or other supplier places on the market a chattel which is defective and unreasonably dangerous to potential users, and harm does result from the defect, while the product is in normal use, the manufacturer should incur a strict liability in tort, apart from any warranties or representations which he may have made. This section reads as follows:

"Sec. 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or con-

sumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

It should be noted that the above section requires the plaintiff to establish that the product, when it left the hands of the manufacturer or other supplier, was at that time in both a defective and unreasonably dangerous condition. This section already has been approved by many court. See for example, *Greenman v. Yuba Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963); *Goldberg v. Kollsman Instrument Corp.*, 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963); *Santor v. A. & M. Karagheusian*, 44 N.J. 52, 207 A.2d 305 (N.J. 1965). It recently was followed by the Supreme Court of Illinois in *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965). It was there stated with reference to the general question of whether a manufacturer should be held liable for dangerous defects in his product without privity and without actual proof of negligence:

"The recent and often cited cases of *Henningsen v. Bloomfield Motors, Inc.*, (1960) 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1; *Greenman v. Yuba Power Products Inc.*, (1963) 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 and *Goldberg v. Kollsman Instrument Corporation*, (1963) 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 typify the increasing number of decisions which are extending the concept of strict liability to the manu-

facturers of products whose defective condition makes them unreasonably dangerous to the user or consumer. At the time Professor Noel wrote his article, Strict Liability of Manufacturers, for the May 1964 issue of the American Bar Journal (50 A.B.J. 446) he listed cases from twenty different jurisdictions (50 A.B.J. 446, 449 n. 15) as supporting the rule. While some of these decisions are not rendered by the highest court of the State, or are rendered by a Federal court noting the lack of authority in that State, on close examination are not clear cut on the matter, they nevertheless support his statement that 'The decisions since 1960, * * *, particularly the ones in the Henningsen, Greenman and Goldberg cases, may well turn the tide [to strict liability] in the near future as to many kinds of products.' (50 A.B.J. 446, 449.) More recent cases are collected in 1 Hursch, American Law of Products Liability, sec. 6.62 (Supp.1965) and 1 Frumer & Friedman, Products Liability, secs. 16, 16A (Supp.1964.)''

It might be added that the torts writers who have most recently dealt with this subject have advocated adoption of the above quoted section 402A, and have found that now about half the states in the country have accepted the general principles adopted by the American Law Institute in that section, after full discussion of the matter extending over a period of several years. See for example Wade, Strict Tort Liability of Manufacturers, 19 Sw.L.J. 513 (1965); Noel, Products Liability of Retailers and Manufacturers in Tennessee, 32 Tenn.L.Rev. 207, 237-261 (1965). There seems to be no unfairness in holding that a manufacturer who markets a product which is not only defective but unreasonably dangerous should be responsible for any physical harm which results to person

or property, even though no privity of contract and no negligence can be established. It might be added that where the plaintiff can sustain the heavy burden of showing, as he must, that the product was in a dangerously defective condition at the time it left the hands of the manufacturer, it is quite likely that some negligence was involved even though this cannot be proved. See Wade, supra, 19 Sw.L.J. 5, (1965); Noel, Products Liability of Manufacturers—To Manufacturers of Products—The Drift Toward Strict Liability, 24 Tenn.L.Rev. 963, 1012-13 (1957).

Furthermore, we are impressed by the fact that it already is possible, in many situations, to enforce strict liability against the manufacturer by a series of actions. The retailer is first held liable on a warranty to his purchaser, then indemnity based on warranty is sought successively from other suppliers, until the manufacturer finally pays the damages, but only after a wasteful and time consuming series of actions. See *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y.2d 5, 226 N.Y.S. 2d 363, 181 N.E.2d 399 (1962); Prosser on Torts (3d. ed. 1964) p. 674; Wade, supra 19 Sw.L.J. 5, 24 (1965); Noel, supra 24 Tenn.L.Rev. 963, 1013-14 (1957). This factor will be of increasing importance under the Uniform Commercial Code, which considerably expands the strict warranty liability of the seller beyond immediate purchasers. It seems unfair to place increasing burdens on retailers, even as to latent defects, and to exempt from responsibility the manufacturer, who normally determines what safety precautions shall be taken before the product is placed on the market, and who is the one most likely to have been careless when a particular item proves to be defective and unreasonably dangerous. It might

be added that in many cases it is the manufacturer who can best pass on the costs of this increased protection to the users or consumers of his products, and to the extent that this has been done because of a more strict liability already imposed in many large states, consumers and users of products in this state already are paying for increased protection.

██ ██ We consider that the judgment in the present case, however, is sustainable only on the misrepresentation principle as developed, with appropriate limitations, in 2 Restatement (Second) Torts, sec. 402B (1965) and in a parallel rule relating to pecuniary loss. There was no showing in the present case that the product was unreasonably dangerous as well as defective and in that situation we find no sufficient grounds for imposing a strict liability on the manufacturer in the absence of material misrepresentations, such as were found by the jury to be present in this case. See *Seely v. White Motor Co.,* 45 Cal.Rptr. 17, 403 P.2d 145 (1965). The Seely case takes the position that while in a commercial loss case the strict tort liability developed in 2 Restatement (Second) Torts sec. 402A (1965) cannot be imposed, a comparable liability without negligence can be imposed where the manufacturer has made representations that his product is free from defects in material and workmanship, even though there is no privity of contract. There is ample testimony in the record that the live power take-off specified for this tractor never functioned properly, and that in spite of repeated efforts of mechanics for Haywood Tractor Company, assisted by a field man from Ford Manufacturing Company, this particular tractor never could be operated at all without frequent breakdowns. Under these circumstances it seems

clear that the jury could reasonably have found that the defendant made material misstatements in its brochures as to the character or quality of this tractor.

The Court of Appeals thought it necessary to reverse all the judgments rendered in the trial court and to send this case back for a new trial, on the ground that the trial juge was in error in charging the jury that they might find for the plaintiff and against all three defendants, or for the plaintiff against one or more defendants, or for all three defendants. It may well be that where liability is imposed on the manufacturer on grounds of breach of warranty, and identical warranties are made by the manufacturer and the retailer, the jury could not properly find for the retailer and against the manufacturer. *Kyker v. General Motors Corp.*, 214 Tenn. 521, 381 S.W.2d 884 (Tenn.1964). Since, however, our opinion is based on grounds of misrepresentation, we believe that the jury could properly find against the manufacturer and for the retailer. They might reasonably have concluded from testimony in the record that in making representations as to the qualities and performance of the tractor the retailer was acting simply as a conduit or agent of the manufacturer for that particular purpose, and that the only substantial reliance was on the manufacturer with reference to the truth and accuracy of these representations. Furthermore, the jury might reasonably have found that the representations contained in the manufacturer's sales literature were more extensive and detailed than those made by the retailer, and that it was reliance on more complete representations in the sales literature, rather than the oral representations by the retailer, that induced the plaintiff to purchase the defective tractor.

[7, 8] With reference to the damages in this type of action, these clearly would include, as in a warranty action, the difference between the actual value of the product, and what it could have been worth as represented. The plaintiff also could include consequential damages to him which proximately resulted from the defectiveness of the tractor, and the jury was properly instructed along these lines. Under these rules we think that the plaintiff could reasonably be found to have proved damages in the amount of $4,000. This matter is well covered in the opinion of the Court of Appeals, as follows:

"Ford Motor Company insists that the verdict of the jury of $4,000 is excessive. The proof is overwhelming that the tractor which the plaintiff purchased is what is often called a 'lemon' which could never be made to operate efficiently and satisfactorily. Plaintiff still had the tractor at his farm at the time of the trial and testified that in his opinion the tractor was not worth over $1,000 at the time of its purchase because irrepairably defective though he paid $4,243.10 purchase price therefor. This testimony was not refuted by anyone, even Mr. Lindsey who sold the tractor to the plaintiff. Mr. Lindsey would not give an opinion as to the value of the tractor at the time of its purchase in its defective condition. Admittedly plaintiff sustained many dollars damages in loss of oil, loss of time of himself and his employees in trying to keep the tractor running as well as loss of very valuable time in the field at crucial periods such as planting time. The field man for Ford Motor Company, Mr. Lambert, who had visited the farm of plaintiff and had seen the tractor on several occasions did not refute the testimony of the

> plaintiff as to its value or its defectiveness. We find there was ample evidence to support the verdict of the jury as to the amount of damages.''

Consequently we do not think that the damages awarded are excessive.

For the reasons indicated in this opinion, the decision of the Court of Appeals is reversed, and the judgments rendered in the trial court, against Ford Motor Company and in favor of Haywood Tractor Company and Dealers Tractor & Equipment Company, are reinstated. The costs of all of the proceedings in this case are to be paid by the defendant Ford Motor Company.