**Belle LEE**

v.

**SEARS ROEBUCK & CO. et al.**

**Civ. A. No. 4399.**

United States District Court
E. D. Tennessee, S. D.

Oct. 5, 1966.

Milligan, Hooper & Harris, Chattanooga, Tenn., for plaintiff.

Bishop, Thomas, Leitner, Mann & Milburn, Chattanooga, Tenn., for Sears Roebuck & Co.

Joseph E. Roberts, Chattanooga, Tenn., for W. R. Newman.

Goins, Gammon, Baker & Robinson, Chattanooga, Tenn., for A. O. Smith Corp. (also Third-Party Plaintiff).

Campbell & Campbell, Chattanooga, Tenn., for Therm-O-Disc, Inc. (Third-Party Defendant).

## OPINION

FRANK W. WILSON, District Judge.

This case is before the Court upon the motion of defendant A. O. Smith Corporation for partial summary judgment in its favor upon "all allegations or theories of the plaintiff which purport to be based upon any grounds except * * * negligence."

The allegations of the complaint relating particularly to defendant A. O. Smith Corporation appear in paragraph IV thereof and are as follows:

"The new electric water heater which exploded was manufactured by the defendant A. O. Smith Corporation and sold to the defendant Sears Roebuck & Company, which company in turn sold it to the plaintiff. Plaintiff avers that said water heater was defective in that the thermostat which controls the flow of electricity to the heating elements therein failed to shut off when the prescribed safe maximum temperature of the water therein had been reached.

"Plaintiff avers that the thermostat was defective when it left the factory of the defendant A. O. Smith Corporation as a part of the water heater.

"Plaintiff further avers that A. O. Smith Corporation was negligent in manufacturing a water heater with a plastic cold-water intake tube which extended to the bottom of the tank from the cold-water intake pipe at the top. This was negligence because the plastic tube was likely to melt and cause a malfunction of the safety "pop' off" (sic) valve when the thermostat failed to function."

Defendant A. O. Smith Corporation contends that the complaint shows on its face that no privity existed between it and the plaintiff, and that the complaint makes no claim of warranty, either ex-press or implied, between the plaintiff and this defendant. These contentions are well founded, but this does not necessarily entitle this defendant to an adjudication of nonliability on all grounds other than negligence, for the Court is of the opinion that a ground for liability may exist even in the absence of negligence or breach of warranty under Tennessee law. Since the law of products liability has been, for some years, in a state of relative flux in Tennessee, as well as in most jurisdictions, it would be appropriate to review at this point some of the recent authorities bearing upon the instant problem.

The first of these is the case of General Motors Corporation v. Dodson, (1960) 47 Tenn.App. 438, 338 S.W.2d 655 (cert. den.). Here the plaintiffs, husband and wife, had purchased a new Oldsmobile automobile from Kemp Motor Company, Gallatin, Tennessee, an authorized dealer of the manufacturer, General Motors. General Motors gave the dealer a written warranty and required the dealer to give an identical warranty to the purchaser. The brakes upon the automobile were defective from the beginning, of which defect the manufacturer knew, and while Mrs. Dodson was driving the automobile, the brakes locked and as a result the car plunged into a ditch and Mrs. Dodson was severely and permanently injured. Plaintiffs filed actions based upon a breach of warranty, and the cases were tried to a jury, which returned verdicts for both plaintiffs. On appeal, General Motors contended that there was no privity of contract between itself and plaintiffs. However, the Court of Appeals held that there was evidence from which the jury could have found an express warranty from General Motors to the purchaser and that the dealer was merely a conduit or subterfuge by which General Motors attempted to insulate itself from liability to consumers, such as plaintiffs. The Court further held that the Uniform Sales Act created an implied warranty of the automobile from manufacturer to consumer, under the provisions of T.C.A. § 47–1215. Upon

petition to rehear, further consideration was given to the argument as to lack of privity. The Court reasserted that the practical effect of the sales plan and the manufacturer's widespread advertising via all news media, obviously not directed at the dealer, was that the manufacturer's warranty was given to the ultimate consumer. The Court also pointed out that, under the language of Burkett v. Studebaker Bros. Mfg. Co., (1912) 126 Tenn. 467, 150 S.W. 421, privity was not essential where the manufacturer had actual knowledge of the dangerous defect.

Then came Kyker v. General Motors Corporation, (1964) 214 Tenn. 521, 381 S.W.2d 884. In this case, petitioner had purchased a new Chevrolet automobile from Sevier Motor Company, an authorized dealer of the manufacturer, General Motors. The manufacturer gave a written warranty to the dealer and the dealer gave an identical warranty to the purchaser. The latter warranty expressly disclaimed any agency between dealer and manufacturer. Petitioner soon experienced difficulty with the engine of the automobile and after fruitless efforts to obtain satisfactory repairs demanded rescission of the sales contract. This was refused, and suit was filed. The action was based upon both express and implied warranties under the Uniform Sales of Goods Act, T.C.A. §§ 47–1212, 1215, and was brought against both the dealer and manufacturer. A demurrer and a motion for directed verdict filed on behalf of General Motors and based upon lack of privity were overruled. The jury returned a verdict against General Motors, apparently finding that the car was defective when sold, and for the dealer, apparently finding that the car was not defective when sold. The Court of Appeals, Eastern Section, held the trial court in error for failing to direct a verdict in favor of General Motors for lack of privity, and this decision was affirmed by the Supreme Court. The Supreme Court held that the Uniform Sales of Goods Act had no application as between a purchaser and a manufacturer who is not the immediate vendor or a party to the contract of sale, thus no warranty could exist. A further basis of the Court's decision was the contradictory verdict of the jury.

In Berry v. American Cyanamid Company, (C.A. 6, 1965) 341 F.2d 41, a case governed by Tennessee law, plaintiff contended that he contracted paralytic poliomyelitis as a result of taking Sabin oral polio vaccine, which defendant produced and distributed to physicians. The trial judge dismissed counts founded in breach of warranty both at common law and under the Uniform Sales of Goods Act on the basis that there was no privity of contract between plaintiff and defendant and that the Uniform Sales of Goods Act was not applicable in the absence of privity. The Court of Appeals for the Sixth Circuit reviewed the Dodson and Kyker cases and earlier Tennessee authorities and concluded that Tennessee had not abolished the requirement of privity in warranty cases, and that no privity existed between plaintiff and defendant.

Most recently came the case of Ford Motor Company v. Lonon, (Tenn. 1966) 398 S.W.2d 240, a much-discussed opinion which seems destined to occupy a position as a landmark in Tennessee products liability law. In that case, the plaintiff was a farmer who had purchased a tractor manufactured by the Ford Motor Company from one of Ford's dealers, Haywood Tractor Company. Prior to the purchase, the plaintiff had read some Ford sales literature describing the features and specifications of the model which he subsequently purchased. The literature bore the name of the Ford Motor Company and had been provided to Haywood by the Ford distributor, Dealers Tractor & Equipment Company. There was some evidence that Ford carried on an extensive advertising program promoting the sale of its products in the various news media addressed to prospective purchasers. The tractor in question was manufactured by Ford, which sold it to its distribution instrumentality, Dealers Tractor & Equipment Company.

Dealers then sold the machine to Haywood Tractor Company, the retailer from whom plaintiff made his purchase. None of these transactions was accompanied by any written warranty. Trouble developed in the operation of the tractor in several important particulars on the second or third day it was used, and plaintiff was unable to enjoy many of the features he had been led to anticipate by the sales literature. No satisfactory adjustment was reached and plaintiff filed suit against Haywood Tractor Company, Dealers Tractor & Equipment Company, and Ford Motor Company. The jury returned a verdict against Ford, but in favor of the other two defendants. Upon appeal, the Supreme Court was confronted with the question of privity:

> "The basic issue presented in this case is whether the manufacturer of a product that has been found to be seriously defective and unsuitable for use should be liable for a resulting commercial loss to the purchaser where there are no direct contractual relations between the purchaser and the manufacturer, in a situation where the purchaser has relied on the manufacturer's booklets and tradename in making the purchase." 398 S.W.2d 242.

The Court went on to answer this question in the affirmative, basing liability on the tort of misrepresentation, and undertook an extensive review of the authorities therefor, culminating in the rules adopted by the American Law Institute in 2 Restatement 2d Torts 402B (1965). Although plaintiff's declaration and the instructions of the trial judge were couched in the language of warranty rather than misrepresentation, the Court felt that:

> " * * * the line between liability for breach of warranty and the tort of misrepresentation is a thin one, and the defendants were as well advised of the nature of the claim by the use of the word warranty as they would have been by the misrepresentation label." 398 S.W.2d 247.

The Court then pointed out that, since the decision in *Lonon* was based upon misrepresentation rather than breach of warranty, there was no occasion to determine the extent to which privity requirements were to be dispensed with under the Uniform Sales Act. It was pointed out that there is less of a barrier to dispensation of privity requirements under the Uniform Commercial Code, now in effect in Tennessee. The Court then turned to a discussion of the *Dodson* case, and noted that *Dodson*, while of doubtful authority upon warranty grounds in view of the *Kyker* decision, could be sustained either upon the misrepresentation theory discussed above or upon the special liability rule of 2 Restatement 2d Torts 402A (1965), which requires neither misrepresentation, privity nor negligence. Section 402A provides:

> "Special Liability of Seller of Product for Physical Harm to User or Consumer"
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a) the seller has exercised all possible care in preparation and sale of his product, and
> >
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The Court, in commenting upon this section, and the rule therein embodied, said:

> "There seems to be no unfairness in holding that a manufacturer who mar-

kets a product which is not only defective but unreasonably dangerous should be responsible for any physical harm which results to persons or property, even though no privity of contract and no negligence can be established."

The Court concluded, however, that there was no basis for holding the manufacturer upon the latter theory under the circumstances of the case:

"We consider that the judgment in the present case, however, is sustainable only on the misrepresentation principle as developed, with appropriate limitations, in 2 Restatement (Second) Torts, § 402B (1965) and in a parallel rule relating to pecuniary loss. There was no showing in the present case that the product was unreasonably dangerous as well as defective and in that situation we find no sufficient grounds for imposing a strict liability on the manufacturer in the absence of material misrepresentations, such as were found by the jury to be present in this case. * * *" 398 S.W.2d 250.

The defendant, A. O. Smith Corporation, points out that the portion of the *Lonon* opinion which approves the rule set forth in Restatement 402A is dicta, and is therefore not controlling upon this Court under the Rules of Decision Act (28 U.S.C. § 1652) and the decision in Erie Railroad Co. v. Tompkins, (1938) 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, cert. den. 305 U.S. 637, 59 S.Ct. 108, 83 L.Ed. 410, reh. den. 305 U.S. 673, 59 S.Ct. 229, 83 L.Ed. 436. Even if the portion of the *Lonon* crucial to the present issue is dicta, it does not follow that it may therefore be ignored. In the words of Justice Cardozo in Hawks v. Hamill, infra, "[L]ittle gain is to be derived from drawing nice distinctions between dicta and decisions."

There is substantial agreement among federal courts that dicta of the highest court of the forum state, at least if considered, clear and unequivocal, and not in conflict with other decisions, should be followed. Doucet v. Middleton, (C.A. 5, 1964) 328 F.2d 97; Hartford Accident & Indemnity Company v. First National Bank & Trust Company of Tulsa, (C.A. 10, 1961) 287 F.2d 69; United States Fidelity & Guaranty Company v. Anderson Construction Company, (C.A. 9, 1958) 260 F.2d 172; Newburgh Land & Dock Company v. Texas Co., (C.A. 2, 1955) 227 F.2d 732; Mutual Benefit Health & Accident Association v. Cohen, (C.A. 8, 1952) 194 F.2d 232; Russo v. Merck & Company, (D.C.R.I., 1956) 138 F.Supp. 147. The obligation to accept local law extends not merely to definitive decisions, but to considered dicta as well. 1A Moore's Federal Practice, p. 3312. See also Hawks v. Hamill, (1933) 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610, a case arising during the pre-Erie days but involving construction of a state statute, even then governed by state decisions, (Supreme Lodge Knights of Pythias v. Meyer, (1924) 265 U.S. 30, 44 S.Ct. 432, 68 L.Ed. 885) wherein the Supreme Court approved the practice of following considered dicta. Two cases from this Circuit have been less than enthusiastic about the guidance to be offered by dicta of the state's highest court. Walker v. Felmont Oil Corporation, (C.A. 6, 1957) 240 F.2d 912; Copper S.S. Co. v. State of Michigan, (C.A. 6, 1952) 194 F.2d 465. These cases hold that federal courts need not be bound by dicta of the forum state courts. Indeed, it was said by Judge Miller in the course of the *Walker* opinion:

"Dictum from the state court of last resort is not binding upon the District Court in a diversity of citizenship action. Copper S.S. Co. v. State of Michigan, (C.A. 6, 1952) 194 F.2d 465, 468. In view of the criticism directed against it, it is questionable what weight it has as 'available data' in attempting to determine what the state law is. West v. American Telephone & Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139."

However, it should be pointed out that the dictum in question in that case was

neither well considered nor clear and unequivocal, and appeared to conflict with a statute. In the *Copper* case, the Court noted that dicta of the Michigan Supreme Court was not binding upon federal courts applying Michigan law, but proceeded to accept such dicta as being in accord with the Court's own view.

 It is difficult to conceive of dicta more considered or more clear and unequivocal than the expressions of the Tennessee Supreme Court in the *Lonon* case with regard to the applicability in Tennessee of Restatement 402A. Discussion of the principles therein set forth and their acceptance in other states is extensive and contains ample citation of authority in support of such principles. See 398 S.W.2d 240 at 248–250. It is apparent that the cited portion of the *Lonon* opinion has the force of law in the State of Tennessee and will be applied by the courts thereof in appropriate cases. Accordingly, it is the law which should be applied in this court in the present diversity action, for such is the obligation of the Court under the Rules of Decision Act and the *Erie* case. To characterize the portion of *Lonon* in question as dicta and thereby reject same as evidence of Tennessee law upon the instant issue would be inconsistent with the plain duty to accept and apply local law in diversity cases in the federal courts.

In view of the foregoing, the Court is of the opinion that the motion of defendant A. O. Smith Corporation for summary judgment in its favor upon all allegations or theories of the plaintiff which purport to be based upon any grounds except negligence should be denied. It appears that a Tennessee plaintiff may now recover of a manufacturer upon one or more of the following theories: (1) negligence, (2) breach of warranty, if privity exists (or possibly in the absence of privity, upon implied warranty under the Uniform Commercial Code, Ford Motor Company v. Lonon, supra), (3) misrepresentation, or (4) sale of a product in a defective condition unreasonably dangerous to the user or his property. It may fairly be said that plaintiff's complaint alleges a cause of action under the fourth theory referred to.

An order will enter in accordance with this opinion.