# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 5, 2013 Session

## TIMOTHY O'KEEFE AND SHARON O'KEEFE v. BARRY GORDON, ROGER FARLEY, AND PLANTATION TITLE

**Appeal from the Chancery Court for Hickman County**
**No. 08179C      Timothy L. Easter, Chancellor**

———————————

**No. M2011-01476-COA-R3-CV - Filed June 18, 2013**

———————————

Purchasers of home brought suit against sellers, purchasers' investment advisor and real estate agent, title company, and several other parties seeking damages and other relief arising out of their purchase of the home. Jury found seller liable for intentional and negligent misrepresentation, negligence, breach of warranties, and violation of the Tennessee Consumer Protection Act and found purchasers' investment advisor liable for intentional misrepresentation. Trial court ordered rescission of the sales contract and awarded purchasers damages and attorneys fees for seller's violation of the Consumer Protection Act Seller and awarded plaintiffs damages against their investment advisor. Seller and investment advisor appeal. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Thomas Irvin Bottorff, Tisha Celess Baldwin, Brentwood, Tennessee; and Melanie Totty Cagle, Centerville, Tennessee, for the Appellants, Barry Gordon and Roger Farley.

T. Holland McKinnee and Keith Jeremy Woodruff, Franklin, Tennessee, for the Appellees, Timothy O'Keefe and Sharon O'Keefe.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Timothy O'Keefe and Sharon O'Keefe ("Plaintiffs"), residents of North Carolina who were engaged in the business of buying homes at below market price and quickly selling them at a profit, entered into an agreement with Barry Gordon, a resident of Tennessee, whereby Gordon was engaged to find three investment properties for the Plaintiffs to

purchase. Upon the recommendation of Gordon, Plaintiffs contracted with Roger Farley and Carylyn Farley, who owned a business in which they built and sold new homes, to purchase a newly-constructed four bedroom home in Hickman County.[1] Plantation Title, owned by Roy and Regina Johnson, acted as the closing agent for the sale; Stewart Title provided the title insurance; and Connie Simmons was the mortgage broker utilized by Plaintiffs.

The closing was conducted by mail on July 13, 2006. Following the closing, Plaintiffs hired real estate agent Kathy Helton, the fiancé of Gordon, to resell the home. When the home did not sell by August 2007, Plaintiffs listed the home with a new real estate agent, Scott Davis, and installed appliances, a driveway, and concrete steps. At that time, Plaintiffs discovered that the septic system was approved for a two bedroom home rather than a four bedroom home.

Plaintiffs filed suit against Mr. Farley, Gordon, and Helton on June 13, 2008, alleging that the defendants breached the warranties of fitness for a particular purpose, merchantability, and good workmanship; committed intentional misrepresentation, negligent misrepresentation, and civil conspiracy; violated the Tennessee Consumer Protection Act; breached the contract; and were negligent. Plaintiffs also alleged that Gordon and Helton had violated the Tennessee Real Estate Broker's Act, and that Mr. Farley violated the Contractor's Licensing Act of 1994 and breached implied and express warranties. The Plaintiffs alleged that they purchased the home in June 2006, upon the representations of Gordon, Helton, and Mr. Farley; that Gordon and Helton represented that they could sell the property quickly at a profit; and that at no time did the defendants disclose various problems with the property, which included the fact that the home had more bedrooms than the septic system permit allowed.

Plaintiffs amended the complaint adding as defendants Ms. Farley; Robert Thomas, an appraiser of the home; Connie Simmons; Roy and Regina Johnson and Plantation Title; and Stewart Title. The amended complaint alleged that Ms. Farley had breached the warranties of fitness for a particular purpose, merchantability, and good workmanship, breached implied and express warranties, and breached the contract; and that Ms. Farley and Plantation Title made intentional and negligent misrepresentations and were guilty of civil conspiracy, violated the Tennessee Consumer Protection Act, and were negligent. All claims against Thomas, Simmons, the Johnson and Stewart Title were dismissed before trial.

---

[1] The record contains three contracts for the sale of the home. The original contract for sale was signed by Mr. O'Keefe and Mr. Farley on May 18, 2006, and listed the purchase price as $90,000; a second contract was signed on May 18 listing the purchase price as $122,000; and the final purchase and sale agreement was signed on July 6 for a purchase price of $125,000. Mr. O'Keefe testified that he only signed the agreement which stated the purchase price as $90,000, and that the sales contracts listing the purchase price for $122,000 and $125,000 were fraudulent. Mr. O'Keefe also testified that he signed an addendum on July 5 which extended the closing date. The agreements at issue in this appeal are the May 18 contract which listed the purchase price as $90,000 and the July 5 addendum.

A jury trial was held beginning February 14, 2011. At the close of proof, the court directed a verdict in favor of Plaintiffs as to Plantation Title. The jury deliberated and rendered its verdict on February 18; judgment on the jury's verdict was entered on March 10. The jury found that Mr. Farley was negligent; negligently and intentionally misrepresented material facts; engaged in an act that was unfair or deceptive towards Plaintiffs and knowingly advertised or marketed for sale a newly constructed residence as having more bedrooms than were permitted by the subsurface sewage disposal system permit; and breached an implied warranty of fitness for a particular purpose, fitness for merchantability, and good workmanship. The jury attributed 50% of the fault for the damages due to negligence and negligent misrepresentation to Mr. Farley, 30% to Gordon and 20% to Plaintiffs.

The jury found that Gordon was negligent; negligently and intentionally misrepresented material facts; acted as a real estate broker without a license to do so, failed to diligently exercise reasonable skill and care in providing services, failed to disclose any adverse facts of which he had knowledge, failed to provide services with honesty and good faith, and failed to be loyal to the interest of Plaintiffs.

The jury found that Ms. Farley and Helton were not liable for any of the claims made against them.

The jury found that the total compensatory damages relative to negligence and/or negligent misrepresentation was $26,000; that "the difference of the actual value of the real estate which is the subject of this lawsuit when it was sold to Plaintiffs and the value it was represented to have when it was sold to Plaintiffs is $29,000"; that Plaintiffs suffered additional actual damages in the amount of $38,000; that Plaintiffs should recover punitive damages from Mr. Farley and Gordon.

Plaintiffs waived their punitive damages claims against Mr. Farley and Gordon following trial. After hearing arguments on April 12 with respect to treble damages and attorneys' fees pursuant to the Tennessee Consumer Protection Act, the court entered the Final Order and Judgment on April 18. The court ordered that the contract between Plaintiffs and the Farleys be rescinded pursuant to Tenn. Code Ann. § 47-18-104(b)(42)(B) and set out a procedure to accomplish the rescission. The court entered judgments against the defendants totaling $249,000, allocated as follows: Mr. Farley—$38,000 in damages and $72,000 in attorneys' fees, both pursuant to the Tennessee Consumer Protection Act; Gordon—$29,000 in accordance with the jury's verdict; Plantation Title—$38,000 in damages and $72,000 attorneys' fees, both pursuant to the Tennessee Consumer Protection Act. The court denied Plaintiffs' request for treble damages. The court did not enter judgment on the $26,000 the jury found as compensatory damages related to negligence or negligent misrepresentation.

Mr. Farley appeals, raising issues with respect to the jury's findings regarding intentional and negligent misrepresentation, negligence, breach of warranties, and the Tennessee Consumer Protection Act. Gordon also appeals, challenging the sufficiency of the evidence to support the jury's verdict finding that he intentionally misrepresented material facts to Plaintiffs and challenging the calculation of the damage award.

## II. ANALYSIS

### A. Liability of Mr. Farley for violation of the Tennessee Consumer Protection Act

The court entered judgment against Mr. Farley with respect to the Tennessee Consumer Protection Act (the "T.C.P.A.") and did not enter judgment against him in accordance with the jury's findings of misrepresentation, negligence, comparative fault, and breach of warranties and award of damages. Thus, we address only the issues he raises related to the T.C.P.A.

Mr. Farley first contends that he cannot be held liable under Tenn. Code Ann. § 47-18-104(b)(42)(A) because the parties signed a sales agreement before the statute became effective.

Tenn. Code Ann. § 47-18-104(b)(42)(A), enacted by 2006 Tenn. Pub. Acts, ch. 671, became effective July 1, 2006.[2] Under the statute, a seller's liability is triggered by the act of "advertising or marketing for sale," and once triggered, can only be avoided by disclosure of the permitted number of bedrooms prior to the execution of any sales agreement. The parties first signed a sales agreement on May 18, amended the contract on July 6 to extend the closing date of the sale, and closed on the sale of the home on July 14. Because the final

---

[2] Tenn. Code Ann. § 47-18-104(b)(42)(A)–(B) provides:

(b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
* * *
(42) (A) Knowingly advertising or marketing for sale a newly constructed residence as having more bedrooms than are permitted by the newly constructed residence's subsurface sewage disposal system permit, as defined in § 68-221-402, unless prior to the execution of any sales agreement the permitted number of bedrooms is disclosed in writing to the buyer. The real estate licensee representing the owner may rely upon information furnished by the owner;

(B) If a newly constructed residence is marketed for sale as having more bedrooms than are permitted by the subsurface sewage disposal system permit and no disclosure of the actual number of bedrooms permitted occurs prior to the execution of a sales agreement, then the buyer shall have the right to rescind the sales agreement and may recover treble damages as provided in § 47-18-109;

amendment of the contract occurred after the effective date of the statute which applies to "any sales agreement," Mr. Farley can be held liable under the statute's provisions.

The jury found that Mr. Farley "engaged in an act that was unfair or deceptive towards plaintiffs, causing plaintiffs to suffer a loss" and that Mr. Farley "knowingly advertised or marketed for sale a newly constructed residence as having more bedrooms than are permitted by the newly constructed residence's subsurface sewage disposal system permit." Mr. Farley contends that he did not commit an unfair or deceptive act under the T.C.P.A. because "(1) the septic system permit was clearly a matter of public record as recorded on the subdivision plat; (2) the sewer permit was forwarded to the closing agent for [Plaintiffs] prior to the closing; and (3) the sewer permit was transmitted to [Plaintiffs] with [the] closing package prior to the consummation of the transaction."

Whether a particular act is unfair or deceptive, for purposes of the T.C.P.A., is a question of fact. *Fayne v. Vincent*, 301 S.W.3d 162, 169 (Tenn. 2009) (citing *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 822 (Tenn. 2003). The standard of reviewing the evidentiary foundation of a jury's verdict is found at Tenn. R. App. 13(d), which provides that "[f]indings of fact by a jury in a civil action shall be set aside only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d); *Kelley v. Johns*, 96 S.W.3d 189, 194 (Tenn. Ct. App. 2002). With respect to this standard of review, this Court has further explained:

> The process of ascertaining whether evidentiary support exists for a jury's verdict is very deferential toward the verdict. Reviewing courts must (1) take the strongest legitimate view of the evidence that favors the verdict, (2) assume the truth of all the evidence that supports the verdict, and (3) allow all reasonable inferences that sustain the verdict.

*Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 204 (Tenn. Ct. App. 2008) (citations omitted).

The record contains material evidence in support of the jury's verdict that Mr. Farley violated the T.C.P.A. when he sold the home to Plaintiffs without disclosing the defect. A critical requirement of Tenn. Code Ann. § 47-18-104(b)(42) is that the required disclosure be to the buyer. While Mr. Farley argues that Plaintiffs had constructive notice of the defect with the home's septic system, indirect communication of the information does not meet the requirements of the statute; thus, the existence of a public record which shows the permitted number of bedrooms or the fact that the information may have been conveyed to an intermediary does not comply with the statute or otherwise absolve the buyer of liability under Tenn. Code Ann. §47-18-104(b)(42)(A).

Mr. Farley also argues that he did not violate Tenn. Code Ann. § 47-18-104(b)(42)(A) because Mr. O'Keefe received a copy of the septic permit in his closing packet. Mr. O'Keefe testified that he did not remember receiving a copy of the required documentation in his closing packet. The closing agent could not recall whether the document had been transmitted to Mr. O'Keefe, and Mr. Farley testified that he did not convey the information to Mr. O'Keefe directly. This is a factual issue that was resolved by the jury. The record contains material evidence in support of the jury's finding that Plaintiffs did not receive and that Mr. Farley did not disclose the number of bedrooms allowed by the subsurface sewage disposal system permit and thus, that Mr. Farley violated Tenn. Code Ann. § 47-18-104(b)(42). We further note in any event that the statute requires that Mr. Farley to disclose the number of bedrooms allowed by the permit prior to the execution of any sales agreement, not that he disclose such information prior to closing.[3]

## B. Liability of Gordon

### 1. Evidence in support of the jury's verdict

Gordon likewise challenges the sufficiency of the evidence to support the jury's verdict finding that he intentionally misrepresented material facts.

To sustain a cause of action for intentional misrepresentation,[4] the plaintiff must show that: 1) the defendant made a representation of an existing or past facts; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact, and 6) plaintiff suffered damages as a result of the misrepresentation. *Devorak v. Paterson*, 907 S.W.2d 815, 819 (Tenn. Ct. App. 1995) (quoting *Metro. Gov't of Nashville, Davidson Co. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)).

Mr. O'Keefe testified that Plaintiffs, who were residents of North Carolina, entered into the contract with Gordon, relying on him to advise them which properties to purchase

---

[3] We also dispose of Mr. Farley's contention that Plaintiffs did not bring the action within the one year statute of limitations because Plaintiffs allegedly received a copy of the septic permit in their closing packet on July 14, 2006. Tenn. Code Ann. § 47-18-110 provides that "any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice." Mr. O'Keefe testified that he did not discover the problem with the septic permit until August 2007. The action was brought in June of 2008, within one year of Plaintiffs' discovery.

[4] The terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous and may be used interchangeably. *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 905 n.1 (Tenn. 1999). We will refer to this claim as intentional misrepresentation.

in Tennessee; that they trusted him completely as an advisor and friend; that he selected the property for purchase; that he advised Plaintiffs that Mr. Farley would sell them the home below market value for $90,000; that homes were selling quickly in the market; that the home was in excellent condition with a market value of $135,000; and that it was only after Plaintiffs listed the home with a second real estate agent that they discovered that there were defects in the construction of the home. In the course of his examination by Plaintiffs, Mr. Farley testified regarding the nature of his relationship with Gordon; that Gordon brought buyers to him and marketed homes on Mr. Farley's behalf; that Gordon loaned him $35,000 two weeks prior to the closing when Mr. Farley was in a financial bind; and that Gordon wanted Mr. Farley to rename a subdivision "Gordon's Crossing" in Gordon's honor.

All of this is material evidence upon which the jury could conclude that the relationship that Gordon maintained with the Farleys conflicted with his contractual relationship with Plaintiffs and that the conflict led him to make false representations of material facts and that he made these misrepresentations knowingly or without belief in their truth of falsity. Gordon's contention in this regard is without merit.

## 2. Benefit of the Bargain Damages

Gordon argues that "by the trial court allowing the 'intentional misrepresentation' to stand, and awarding the $29,000.00 in 'benefit of the bargain' damages, Mr. O'Keefe is being unjustly enriched . . . ." Gordon further contends that he should not be liable for damages because Plaintiffs failed to mitigate their damages.

This Court has summarized the appropriate method for calculating damages for intentional misrepresentation as follows:

> In an action for damages caused by a fraudulent misrepresentation, the proper measure of the plaintiffs' general damages is the benefit of the bargain rule. *Ford Motor Co. v. Lonon*, 217 Tenn. 400, 398 S.W.2d 240 (1966); *Shwab v. Walters*, *supra* [147 Tenn. 638, 251 S.W. 42 (1923)]; *Augur v. Smith*, 90 Tenn. 729, 18 S.W. 398 (1891) and *Hogg v. Cardwell*, 36 Tenn. 151 (1856). This measure of damages allows the plaintiff to recover the difference between the actual value of the property he received at the time of the making of the contract and the value that the property would have possessed if [the defendant's] representations had been true. 37 Am. Jur. 2d, Fraud and Deceit, § 353, p. 473 (1968); see *Shwab v. Walters*, *supra*; 13 A.L.R.3d, Damages—Fraudulent Representation, § 3, p. 885 (1967). The application of this measure of damages compels the defendant to make good on the false representations. The measure of damages and the fixing of the value of the property are to be determined as of the time of the transaction. 37 Am. Jur. 2d,

§ 365, p. 495 (1968); 13 A.L.R.3d, §§ 2–3, pp. 882–902 (1967); McCormick on Damages, § 122, pp. 456–457 (1935).

*Elchlepp v. Hatfield*, 294 S.W.3d 146, 152 (Tenn. Ct. App. 2008) (quoting *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228 (Tenn. Ct. App. 1976)).

In accordance with the jury's finding that Gordon intentionally misrepresented material facts, Plaintiffs were entitled to recover the difference between the actual value of the property they received at the time of the making of the contract and the value that the property would have possessed if Gordon's representations had been true. Plaintiffs paid $90,000 for property they believed—based on Gordon's representations—that they could resell immediately at its market value of $135,000. The jury's award of $29,000 is within the range of values established by the price Plaintiffs paid for the property and the testimony of Robert Thomas, a real estate appraiser, who testified that he appraised the home in 2006 as having a value of $125,000.[5] Applying the formula for calculating benefit of the bargain damages, the jury's verdict is supported by the evidence. The award of damages against Gordon is based on the jury's finding of intentional misrepresentation and is separate from the equitable remedy of rescission of the sale of the property which Plaintiffs were awarded against Mr. Farley for his violation of the T.C.P.A.[6]

Mr. Gordon contends that Plaintiffs are not entitled to recover benefit of the bargain damages because they did not attempt to correct the septic permit defect by applying to have the property retested and then installing the field lines necessary to accommodate a four bedroom home. The principle that an injured party must mitigate his damages is not applicable under the facts of this case. As noted above, the damages in this case are based on the intentional misrepresentation of Mr. Gordon and are what the jury determined would

---

[5] Thomas further testified that his appraisal was inaccurate because he was not aware of the septic permit defect and that such a defect would decrease his valuation of the home.

[6] In *Goodman v. Jones*, No. E2006-02678-COA-R3-CV, 2009 WL 103504, at *10 (Tenn. Ct. App. Jan. 12, 2009), the buyer of a home sued the seller seeking rescission and damages on theories of fraud, misrepresentation, breach of contract and violation of the T.C.P.A. The trial court required plaintiffs to elect between rescission and damages; the plaintiffs elected rescission and the case was submitted to the jury on that basis, after which the jury held for the seller. On appeal, this Court reversed the trial court and remanded for a retrial, holding that the court erred in failing to instruct the jury on the buyers' theories of breach of contract and negligent misrepresentation. In connection with the remand, the *Goodman* court discussed the election of remedies between rescission and damages and concluded that "a judgment for rescission *and* damages is not necessarily inconsistent" and that "the Buyers, if successful on the issue of liability, may well be entitled to damages as well as rescission and restitution." The conclusion in *Goodman* is appropriate in the case at bar, particularly where the Plaintiffs were successful in establishing liability against Mr. Farley under the T.C.P.A. and against Mr. Gordon for intentional misrepresentation. Under the facts of this case, a judgment for rescission and as well as one for benefit of the bargain damages is not inconsistent, neither does it result in a double recovery.

compel him to make good on his false representations; in this circumstance, where it is Gordon's misrepresentations that are being remedied, Plaintiffs have no duty to mitigate.[7]

### III. CONCLUSION

For the reasons set forth above, we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE

---

[7] *See Haynes*, 546 S.W.2d at 234, in which the plaintiff sued to recover benefit of the bargain damages arising from a misrepresented property line; the court held, under the facts of that case, that there was "no possible way that the plaintiffs could have mitigated these damages." In this case, Plaintiffs were buying the property for investment purposes on the basis of representations made by Gordon, including the return on their investment; the damages assessed were based on the difference in values. We do not agree that, under these facts, Plaintiffs had a duty to expend additional funds in an effort to mitigate their loss, particularly in the absence of proof that expenditures on their part would have altered the values.