NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0392n.06

No. 15-6299

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 03, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Tennessee Commercial Bank, | ) ) ) ) | |
| Plaintiff – Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT |
| JAMES ASHMORE, | ) ) | NASHVILLE |
| Defendant – Appellant. | ) | |

BEFORE:     KEITH, BATCHELDER, and GRIFFIN, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**     Defendant-Appellant James Ashmore ("Ashmore") appeals the district court's grant of summary judgment in favor of Plaintiff-Appellee, the Federal Deposit Insurance Corporation ("FDIC"), in the FDIC's suit seeking to recover damages for breach of contract in connection with Ashmore's defaulted loan. Ashmore signed a promissory note (the "Note") in favor of Citizens Corporation ("Citizens") for $5,875,000 plus interest in exchange for a loan in that amount. Citizens subsequently entered into a series of participation agreements with Tennessee Commerce Bank (the "Bank") which gave the Bank the right to receive funds paid by Ashmore to Citizens pursuant to the loan. Subsequently, the Bank and Citizens entered into a Transfer, Assignment, and Assumption Agreement (the "Assignment") that would transfer all right, title, and interest in Ashmore's loan to the Bank. Several months later, the Bank closed and the State of Tennessee appointed the FDIC as the Bank's receiver. The Note on Ashmore's loan was in the Bank's files when the

FDIC took over as receiver. The FDIC delivered a notice of default to Ashmore demanding payment-in-full for the loan. Ashmore never paid the FDIC, and the FDIC filed an action for breach of contract and unjust enrichment to recover. The district court granted summary judgment in favor of the FDIC. On appeal, Ashmore claims that the district court's entry of summary judgment was improper because genuine issues of material fact remain as to whether Commerce properly transferred the Note to the Bank. For the following reasons, we **AFFIRM**.

## I.    Background

On November 30, 2009, Ashmore executed a promissory note in favor of Citizens in the amount of $5,875,000. The Note provided for Ashmore to make scheduled semi-annual payments with interest, and the holder of the Note held the right to "declare all principal and unpaid interest then outstanding immediately due and payable" if Ashmore was late with any scheduled payment by more than ten days. The Note was secured by a Pledge and Security Agreement in which Ashmore pledged shares of stock in three corporations as collateral.

Citizens and the Bank thereafter entered into several participation agreements by which the Bank obtained certain rights to receive payments made by Ashmore pursuant to the Note. On December 15, 2009, the Bank obtained a participation in the Note for the amount of $4,875,000. On January 4, 2010, the Bank obtained another participation in the Note in the amount of $1,000,000. Three subsequent participation agreements were entered moving back the maturity date, with the final maturity date set for November 4, 2011. Following these participation agreements, the Bank obtained all of the remaining participation interests in the Note but did not have the right to enforce the Note. Under these participation interests, the Bank was "without recourse" if Ashmore failed to pay the Note.

2

On August 11, 2011, Citizens and the Bank entered into an Assignment agreement. The Assignment states that, "[Citizens] now desires to transfer, assign and delegate to [the Bank], and [the Bank] desires to assume, all of [Citizens'] remaining right, title and interest in and to the Notes, Loans and the other Loan Documents, including, without limitation, all Administrative Agent Rights under the Participation Certificates or any other Loan Documents." Further, the Assignment states that:

> [Citizens] hereby transfers, assigns, and conveys unto [the Bank], and delegates to [the Bank], its successors and assigns, without recourse, representation or warranty . . . all of [Citizens'] right, title, and interest in, to and under the Loans, Notes and Loan Documents, including, without limitation, all Administrative Agent Rights under the Participation Certificates or otherwise, and any and all interests of [Citizens] in any of the collateral and/or security provided for the Loans.

The Assignment further states that: "[the Bank] hereby assumes all of [Citizens'] right, title, and interest in and to the Assigned Interests and Documents, including without limitation, the immediate right to collect the Loans and pursue enforcement of the Loan Documents, all as may be done in [the Bank's] sole discretion." The Assignment also provides that delivery of any notes associated with the loans referenced in the agreement would occur "within ten (10) days from the date of this Agreement . . . in order to effect the purposes of this Agreement."

The attached "Exhibit A" to the Assignment specifically listed the "[l]oan by Citizens Corporation to James D. Ashmore evidenced by a $5,875,000 Promissory Note dated November 30, 2009." The Chairman of Citizens, Ed Lowery ("Lowery"), signed an allonge on August 11, 2011—the same day he signed the Assignment.[1] The allonge specifically references Ashmore's promissory note, the amount of the loan, and the date it was entered. The allonge states: "[p]ay to the order of [the Bank] . . . without recourse, and without representations and without

---

[1] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Allonge, Black's Law Dictionary (10th ed. 2014).

warranties, express or implied, except as may be set forth in [the Assignment Agreement] by and between [Citizens] and [the Bank] of even date herewith [August 11, 2011]." The Assignment was duly signed by Lowery and the Senior Vice President of the Bank, Thomas Crocker ("Crocker").

On the same day, Citizens and the Bank also entered into a Letter of Intent ("LOI") relating to a prospective debt-previously-contracted transaction ("DPC Transaction") that would exchange the indebtedness of Citizens and some of its minority shareholders for pledged stock. Ashmore was among the indebted parties involved in the LOI and prospective DPC transaction. The LOI stated that it is "intended only to set forth the primary terms of the DPC Transaction and the basic outline for completing same." It additionally stated that the LOI "shall not bind [the Bank] to close the DPC transaction in any manner." Several of the indebted parties referenced in the LOI did not sign it. The LOI makes no reference to delivery of notes to the Bank, and it makes no express reference to the Assignment.

The Bank obtained possession of Ashmore's note, although it is not entirely clear from the record who delivered it or when it was delivered.[2] An officer of Citizens, Richard Moody ("Moody"), stated that he delivered a box to the Bank sometime prior to September 1, 2011. After returning from a trip, Lowery asked Moody about the whereabouts of "my loan file to Citizens Corp." Moody reported that Crocker (from the Bank) told him that the Assignment called for the Bank "to control the notes with stock pledged." However, Moody did not know whether the loan notes were included in the box that he delivered to the Bank. Moody also stated that the Bank assured him that it would send along trust receipts and allonges the next day, and Moody confirmed to Lowery that he did not sign any allonges.

---

[2] Ashmore does not claim that anyone other than an agent of Citizens delivered the Note to the Bank. In fact, Lowery's declaration fairly definitively admits that it was Moody who delivered the Note to the Bank.

On February 19, 2015, Lowery signed a declaration regarding the events and understandings surrounding the execution of the Assignment, the LOI, and the DPC Transaction. In the declaration, Lowery stated that "the sole purpose of the Assignment was to implement the LOI." He further stated that, "I was the only person who could authorize Citizens to transfer the Borrower Party loan documents to [the Bank]." He claims that he did not endorse the promissory notes, including Ashmore's, to the Bank, and did not authorize delivery of the notes. Further, he claims that the Bank took possession of the notes without his "knowledge, consent or endorsement."

Lowery also stated in the declaration that Crocker assured him that the Bank "had only possession and not ownership" of the loan notes, including Ashmore's Note. Crocker also allegedly stated to Lowery after delivery of the Note that the Bank would complete the LOI and DPC Transaction, in addition to providing Citizens with a trust receipt for the Note.

The LOI and DPC Transaction were never executed, and, on January 27, 2012, the Tennessee Department of Financial Institutions closed the Bank and appointed the FDIC as receiver. The FDIC-R ("FDIC") took possession of the Note, and issued a default letter to Ashmore, but Ashmore never made a payment on the Note to the FDIC.

## II. Procedural Posture

The FDIC filed a complaint against Ashmore in the district court on May 29, 2013. Following discovery, the parties filed cross-motions for summary judgment. The district court entered an order granting the FDIC's motion and denying Ashmore's motion. Judgment was entered in the amount of $5,875,000 in principal, $1,339,211.73 in interest up until October 15, 2014, and $925.5137 per day from October 16, 2014 until the date of judgment.

### III.   Standard of Review

"We review the district court's grant of summary judgment de novo." *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 433 (6th Cir. 2009). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, we must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations and marks omitted).

### IV.   Discussion

It is undisputed that the note to Ashmore's loan is a negotiable instrument that is "governed by the laws of[] the State of Tennessee." *See Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 749 (6th Cir. 2014) ("[U]nder Tennessee law, a promissory note is a negotiable instrument, unless it contains a conspicuous statement that it is not negotiable."). The right to enforce a negotiable instrument is conferred to: (1) holders of an instrument and (2) non-holders with the rights of a holder. Tenn. Code Ann. § 47-3-301. Negotiation to a new holder "requires transfer of possession of the instrument and its indorsement by the holder." Tenn. Code Ann. § 47-3-201(b). Here, Ashmore's note was payable to Citizens. Thus, for the Bank, or the FDIC (as its successor-in-interest), to obtain the right to enforce the Note through negotiation, the Note had to be endorsed by Citizens (the holder). The problem with any attempted negotiation in this case is that the Note was not properly endorsed by Citizens. *See* Tenn. Code Ann. § 47-3-204(a). The Note was not signed on its face by Citizens. *See id*. Nor was there an allonge *affixed* to the

note that was delivered to the Bank.[3]  *See id.*  Therefore, the Note in this case was not properly

negotiated to the Bank.

However, enforcement rights in a negotiable instrument can also vest through transfer.

> Although negotiation requires endorsement of the instrument, '[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course.' Tenn.[]Code Ann. § 47–3–203(b).  An instrument is transferred when it is delivered 'for the purpose of giving to the person receiving delivery the right to enforce the instrument.' *Id.* § 47–3–203(a).  Comment 1 to § 47–3–203 clarifies that '[t]he right to enforce an instrument and ownership of the instrument are two different concepts,' and Comment 2 explains that '[i]f the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument.'

*Donaldson v. BAC Home Loans Servicing, L.P.*, 813 F. Supp. 2d 885, 895 (M.D. Tenn. 2011).

### A. Citizens delivered the Note to the Bank for the purpose of giving the Bank the right to enforce the Note.

#### 1. The Assignment provides overwhelming evidence that Citizens intended to deliver Ashmore's Note for the purpose of granting the Bank the right to enforce it.

On appeal, Ashmore's sole argument is that there is a genuine dispute of material fact in

regard to whether Citizens properly transferred the Note to the Bank pursuant to Tenn. Code

Ann. § 47-3-203(a).  It is undisputed that Ashmore's note was delivered to the Bank by an agent

of Citizens.  It is also undisputed that the FDIC was the Bank's successor-in-interest following

the Bank's closure.[4]  Therefore, our only inquiry is whether a genuine dispute of material fact

---

[3] The FDIC produced an allonge signed by Citizens Chairman Lowery that was dated August 11, 2011— the same day that the parties executed the Assignment.  However, the FDIC could not prove that this allonge was "affixed" to the Note, as required for negotiation.  *See* Tenn. Code Ann. § 47-3-204(a).

[4] The FDIC states that it is more than merely a successor-in-interest because "[t]he FDIC, as receiver of a failed bank, does 'not simply step into the private shoes of local banks,' but most often stands in a litigation position substantially superior to that which a failed bank would have occupied had it met with the same claim." *First State Bank of Wayne Cty., Kentucky v. City & Cty. Bank of Knox Cty., Tennessee.*, 872 F.2d 707, 718 (6th Cir. 1989) (quoting *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447, 472 (1942) (Jackson, J., concurring)).

exists regarding whether Citizens delivered the Note "for the purpose of giving [the Bank] the right to enforce the instrument." Tenn. Code Ann. § 47-3-203(a).

Ashmore argues that "there is virtually no evidence" that could support the FDIC's contention that the Note was delivered with the intent to give the Bank the right to enforce the Note. However, the duly executed Assignment provides overwhelming evidence that the delivery of the Note by Citizens to the Bank was for the purpose of giving the Bank the right to enforce the Note. The Assignment itself recites that, "[Citizens] now desires to transfer, assign and delegate to [the Bank], and [the Bank] desires to assume, all of [Citizens'] remaining right, title and interest in and to the Notes, Loans and the other Loan Documents, including, without limitation, all Administrative Agent Rights under the Participation Certificates or any other Loan Documents." Further, the agreement states that:

> [Citizens] hereby transfers, assigns, and conveys unto [the Bank], and delegates to [the Bank], its successors and assigns, without recourse, representation or warranty . . . all of [Citizens'] right, title, and interest in, to and under the Loans, Notes and Loan Documents, including, without limitation, all Administrative Agent Rights under the Participation Certificates or otherwise, and any and all interests of [Citizens] in any of the collateral and/or security provided for the Loans.

The Assignment further states that: "[the Bank] hereby assumes all of [Citizens'] right, title, and interest in and to the Assigned Interests and Documents, including without limitation, the immediate right to collect the Loans *and pursue enforcement* of the Loan Documents, all as may be done in [the Bank's] sole discretion." The Assignment also explicates an express intent to deliver any notes associated with the loans referenced in the agreement "within ten (10) days from the date of this Agreement . . . in order to effect the purposes of this Agreement."

The attached "Exhibit A" to the Assignment specifically listed the "[l]oan by Citizens Corporation to James D. Ashmore evidenced by a $5,875,000 Promissory Note dated November

30, 2009." The FDIC also produced an allonge that was signed and dated by Lowery, as Chairman of Citizens, on August 11, 2011, the same day he signed the Assignment. The allonge specifically references Ashmore's promissory note, the amount of the loan, and the date it was entered. The allonge states: "[p]ay to the order of [the Bank] . . . without recourse, and without representations and without warranties, express or implied, except as may be set forth in [the Assignment Agreement] by and between [Citizens] and [the Bank] of even date herewith [August 11, 2011]."

Under Tennessee law, "[t]he intent of the parties is presumed to be that specifically expressed in the body of the contract." *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). The Assignment could not be clearer that Citizens intended to transfer *all* right, title, and interest in Ashmore's note, including the right of enforcement, to the Bank. The Assignment specifically denotes the intent to transfer "All Administrative Agent Rights" in the Note and the right to "pursue enforcement of the Loan Documents" at the Bank's "sole discretion," in addition to the intent to deliver the Note within ten days "in order to effect the purposes of this Agreement." The language is unambiguous, unqualified, and universal as to the purpose of the Assignment—that Citizens would assign all right, title, and interest in Ashmore's note to the Bank.

Ashmore asks this Court to ignore contract law and focus solely on the UCC issue of whether *delivery* by Citizens was "for the purpose of giving [the Bank] the right to enforce the instrument." Tenn. Code Ann. § 47-3-203(a). Indeed, Ashmore is correct that an Assignment contract does not *per se* compel a finding that a transfer occurred because "[t]he right to enforce an instrument and ownership of the instrument are two different concepts." *Id.*, cmt. 1. And while the Assignment clearly gives the Bank ownership rights in the Note, it does not necessarily

meet the requirements to complete a transfer of enforcement rights under Tenn. Code Ann. § 47-3-203(a). However, when, as here, there is a contract between the parties that unambiguously states the unqualified intent of the parties to transfer all right, title, and interest in Ashmore's loan to the Bank, the parties' intent at the time of contracting is exceedingly strong evidence regarding their intent at the time of delivery.

Ashmore cites no case law supporting the proposition that we must ignore the plain language of a facially valid, signed agreement between the parties when evaluating whether the delivery was "for the purpose of giving the person receiving delivery the right to enforce the instrument" under Tenn. Code Ann. § 47-3-203(a).[5] Nor does it make logical sense to do so. This is particularly true when, as here, "the person receiving delivery" is a presently defunct bank in receivership by the FDIC because the likelihood of a paper trail relating specifically to the purpose of the parties at the time of *the delivery* is minimal. Therefore, the assignment contract should not be disregarded merely because the question presented involves a statutory question about the parties' intent at the time of delivery.

### 2. The evidence produced by Ashmore does not raise a genuine dispute of material fact that Citizens delivered the Note for a purpose other than granting the Bank a right to enforce it.

Ashmore presents a list of thirteen points in the record that he claims raise genuine issues of material fact regarding the purpose of the delivery of the Note. Ashmore claims that the purpose underlying delivery of the Note was for "the Bank to hold the Note in trust until the DPC Transaction was consummated." However, even assuming *arguendo* that the parol

---

[5] It should be noted that another individual involved in the Assignment transaction, David S. Myers ("Myers"), also faced an enforcement action brought by the FDIC as receiver to the Bank for a loan taken in the same amount as Ashmore's. In that case, Myers made the same argument as Ashmore—that the transfer failed to comply with Tenn. Code Ann. § 47-3-203(a) because the Note was not delivered for the purpose of enforcement. There, the district court rejected this argument, saying, "[t]he problem with this argument is it ignores the language of the Transfer Assignment." *Fed. Deposit Ins. Corp. v. Myers*, No. 3:12-1241, 2016 WL 927438, at *8 (M.D. Tenn. Mar. 10, 2016).

evidence rule is inapplicable, as Ashmore claims, the evidence in the record is insufficient to create a genuine issue of material fact as to the purpose of the delivery.

Ashmore's primary evidentiary support is Lowery's February 19, 2015 declaration. In his declaration, Lowery asserts that only he was authorized to endorse the Note to the Bank and that he did not endorse the Note. However, the record shows that Lowery did endorse an allonge referencing Ashmore's note that stated: "[p]ay to the order of [the Bank] . . . without recourse, and without representations and without warranties, express or implied, except as may be set forth in [the Assignment agreement] by and between [Citizens] and [the Bank] of even date herewith [August 11, 2011]." Further, the Assignment plainly contains no statement that specifically designates Lowery or any other agent of Citizens as the sole authorizer of delivery. If Lowery did not want to authorize delivery of the Note to the Bank, he presumably would not have signed the Assignment and the allonge on August 11, 2011, which required delivery of the Note "within ten (10) days from the date of this Agreement . . . in order to effect the purposes of this Agreement." While it may be true that the allonge Lowery signed was insufficient to comply with Tenn. Code Ann. § 47-3-201 for the purpose of negotiating the Note to the Bank, the fact that he signed the allonge on the same day that he signed the Assignment remains virtually conclusive as to Citizens' intent to transfer the Note to the Bank for the purpose of giving it authority to enforce the Note.

Next, Ashmore argues that the Lowery declaration proves that only Lowery could authorize delivery of the Note to the Bank and that he did not authorize the delivery. However, because the provided time for Citizens to effectuate delivery was "within ten (10) days," the plain language of the Assignment contract left no room for Lowery to exercise discretion once the Assignment was executed. Citizens could have been subjected to an action for breach of

contract if it failed to deliver the Note within that timeframe. Therefore, Ashmore's evidence raises no genuine issue of material fact as to the purpose underlying delivery of the Note to the Bank.

Next, Ashmore cites several email exchanges between Lowery and Moody, another officer of Citizens, to support his contention that genuine issues of material fact remain as to the purpose of the Note's delivery. On August 31, 2011, Lowery sent an email to Moody asking, "[w]here is my loan file to Citizens Corp.[?]" Moody responded that the Bank told him that the Assignment called for the Bank "to control the notes with stock pledged," but that Moody did not know whether the notes were included in the box delivered to the Bank. Moody stated to Lowery that, "I delivered the box late in afternoon" after another Citizens employee compiled the documents in the box. Moody also stated that the Bank assured him it would send along trust receipts and allonges the next day and confirmed that he did not sign any allonges.

At the summary judgment stage, we must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott*, 550 U.S. at 378 (internal citations and marks omitted). Here, viewing the facts presented in the emails in the light most favorable to Ashmore, there was some confusion surrounding the delivery of the Note to the Bank. However, this string of emails does not present any fact from which a juror could reasonably infer that the delivery of the Note was for any purpose other than to allow the Bank to execute it. The mere fact that Moody did not sign any allonges does not refute the fact that Lowery did sign an allonge twenty days prior to the email in connection with the Assignment. While there is a vague reference to the Bank's promise to provide "trust receipts," there is nothing in the record that would allow a jury to draw a reasonable inference that the purpose underlying the delivery was to allow the Bank to hold the Note in trust. In fact,

12

the email chain further confirms that an agent of Citizens delivered a box to the Bank shortly after signing the Assignment, which only weakens Ashmore's argument that Citizens did not deliver the Note to the Bank for the purpose of enforcement. No genuine dispute of material fact is raised by these emails.

Finally, Ashmore references oral assurances made by Crocker, the Bank's Senior Vice President, to Lowery regarding the LOI and his understanding of the legal effect of the Bank's possession of the Note. However, the statements and beliefs of an executive from the Bank could have no effect on whether *Citizens* effectuated the delivery of the Note "for the purpose of giving [the Bank] the right to enforce the instrument." Tenn. Code Ann. § 47-3-203(a). Neither Crocker nor Lowery delivered the Note, and, in any case, these statements cannot raise a genuine dispute regarding the purpose of the Assignment and allonge Lowery signed on August 11, 2011, which clearly articulate Citizens' intent to transfer enforcement rights of the Note to the Bank.

Additionally, none of the evidence Ashmore produced to support his theory regarding the purpose of the delivery occurred prior to, or contemporaneously with, the delivery of the Note. Rather, the only evidence in the record regarding events that occurred before or during delivery, and is probative to the intent of the parties at or before delivery, is presented by the Assignment agreement.

Therefore, there is no genuine dispute of material fact in regard to whether the Note was delivered for the purpose of allowing the Bank to enforce it.

### 3. The district court did not err when it applied Tennessee's Parol Evidence Rule to bar consideration of Lowery's declaration.

The district court held that "consideration of the assertions made in Lowery's declaration would, indeed, constitute a violation of the parol evidence rule." *Fed. Deposit Ins. Corp. v. Ashmore*, No. 3:13-CV-00519, 2015 WL 12469189, at *5 (M.D. Tenn. Oct. 21, 2015). Under

Tennessee law, the parol evidence rule "does not permit contracting parties to use extraneous evidence to alter, vary, or qualify the plain meaning of an unambiguous written contract." *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 672 (Tenn. 2013) (internal quotation marks omitted). Here, Ashmore argues that the parol evidence rule is not relevant because the rule only applies when such evidence is offered "in order to hold [a party] on a promise or contract obligation not in the writing or contradictory of the writing." *Huddleston v. Lee*, 284 S.W.2d 705, 710 (Tenn. Ct. App. 1955). He also asserts that the issue of intent at the time of delivery is not a matter of contract law. However, as stated above, the apparent assertion that prior contracts must be ignored when evaluating the intent of the parties at the time of delivery under Tenn. Code Ann. § 47-3-203(a) is completely unsupported. Further, Ashmore does not explain how Citizens was not contractually obligated to deliver the Note when the Assignment specifically stated that any notes associated with the loans referenced in the agreement would be delivered "within ten (10) days from the date of this Agreement . . . in order to effect the purposes of this Agreement."

Ashmore does not otherwise argue that the district court's analysis or application of the parol evidence rule was erroneous. Therefore, the district court did not erroneously apply the parol evidence rule.

### B. The district court's application of 12 U.S.C. § 1823 and the *D'Oench* Doctrine are not at issue in this appeal.

In granting summary judgment, the district court applied a common law estoppel rule called the *D'Oench* doctrine codified in part by 12 U.S.C. § 1823(e). In *D'Oench*, the Supreme Court stated that, "[p]ublic policy requires that a person who, for the accommodation of the bank, executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be

enforced." *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447, 459 (1942) (quoting *Mount Vernon Trust Co. v. Bergoff*, 272 N.Y. 192, 196 (1936)). The subsequent statute partially adopting the *D'Oench* doctrine states that:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
>
> **(A)** is in writing,
> **(B)** was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> **(C)** was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> **(D)** has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). While the district court held that Ashmore's evidence raised no genuine dispute of material fact, it also applied the *D'Oench* doctrine and 12 U.S.C. § 1823(e)(1) to bar Ashmore's defenses. Ashmore has not appealed that determination, but instead claims only that the Bank was not a valid transferee under Tenn. Code Ann. § 47-3-203(a). Even assuming *arguendo* that a genuine dispute of material fact remains on that question, Ashmore has waived his right to challenge the district court's application of the *D'Oench* doctrine. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

Because a substantial portion of Ashmore's argument rests on allegations made in Lowery's declaration, and based on private conversations that he had with Crocker from the Bank, it is unclear how Ashmore's lone argument on appeal might circumvent the application of

*D'Oench* and 12 U.S.C. § 1823(e)(1). Rather, "[i]t is well settled that an oral 'side agreement' to an asset, tending to diminish the FDIC's interest in that asset, cannot defeat or diminish an otherwise valid obligation contained in the Bank's records." *Abrams v. Fed. Deposit Ins. Corp.*, 944 F.2d 307, 310 (6th Cir. 1991) (citing *D'Oench*, 315 U.S. at 458–460)). If Crocker and Lowery did in fact hold private conversations in which the Bank agreed to hold the Note without enforcement rights, then that agreement falls squarely within the statute as "an agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it" because it conflicts with the plain language of the Assignment granting the Bank the right to "pursue enforcement of the Loan Documents." 12 U.S.C. § 1823(e)(1). Therefore, the *D'Oench* doctrine applies to bar any remaining defense that Ashmore might raise to avoid his liabilities on the Note. *See Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86, 93 (1987) ("[O]ne who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities.").

## V.     Conclusion

For the foregoing reasons, we **AFFIRM**.